Yetta R. WILBURN, Appellant,

v.

Arthur Julius WILBURN, Appellee.

No. 3252.

District of Columbia Court of Appeals.

Argued June 17, 1963.

Decided July 22, 1963.

Rehearing Denied Sept. 5, 1963.

Belford V. Lawson, Jr., Arnold A. Stahl and W. Dean Wagner, Washington, D. C., for appellant.

James S. Brocard and Lowry N. Coe, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

 This was a suit by the wife for maintenance and for custody of a child of the parties. The complaint was filed on October 27, 1960, and the answer, coupled with a motion to dismiss on the ground of *forum non conveniens,* was filed on February 6, 1961. The motion to dismiss was denied on June 9, 1961, and on July 7, 1961, when the husband failed to appear for pre-trial following several continuances, the trial court ordered the answer stricken and the case to proceed as in default. In August 1961 the wife and several witnesses who appeared in her behalf gave testimony at a hearing which lasted two days. The husband was represented by counsel who cross-examined extensively. At the close of the hearing, the trial judge took the case under advisement. Sixteen months later, in December 1962, he filed an opinion and order dismissing the complaint on the ground of *forum non conveniens.*[1] Briefly, the facts are as follows.

The wife and husband were married in 1946 and thereafter became domiciliaries of the District of Columbia where, in 1949, their son was born. In 1956 the family purchased a house and moved to Silver Spring, Maryland. Although both the wife and husband were employed in the District of Columbia—the wife as a school teacher and the husband by the Auditor General's Of-

fice—there is substantial evidence that after 1956 the parties became domiciliaries of the State of Maryland. In the summer of 1960 marital difficulties led to their separation. At the same time, the husband by force and over the protests of the wife removed the child from their joint custody. While the child's residence immediately following his forced removal is uncertain, sometime in the fall of 1960 the husband secreted him with his paternal grandmother in North Carolina. Thereafter, it appears the husband returned to his place of employment in the District of Columbia. His exact whereabouts, however, were unknown. The wife was unable to find him at his usual place of employment and his mail and checks bore only a post office box in Langley Park, Maryland.

Constant efforts by the wife to communicate with the child proved futile. She has neither seen nor heard from him since 1960. Upon the advice of her family, she sought redress in the courts. It is apparent from her complaint that she instituted these actions in the District of Columbia because she was unable to effect service of process on her husband in Maryland, and because she hoped to obtain service in the District of Columbia, his place of employment. Her efforts finally met with success in January 1961. Nevertheless, the husband claims that from September 1960 until the present time he has been a resident and citizen of the State of North Carolina.

In dismissing sua sponte on the ground of *forum non conveniens,* the trial court found that the courts of Maryland or North Carolina were more appropriate forums to determine the issues of custody and maintenance than the courts of the District of Columbia.[2] We reject this view because we

---

1. Since a final judgment is required to sustain the application of the law of the case rule, Washington v. Government of District of Columbia, D.C.Mun.App., 152 A.2d 191, 192 (1959), the denial of the original motion to dismiss on the ground of *forum non conveniens* did not constitute a bar to the subsequent order dis-

missing the complaint upon the same ground.

2. The significant portions of the trial court's opinion read as follows:
 "Thus, it would appear that the facts of this case do not compel a conclusion either way on the *forum non conveniens*

see it as an erroneous application of law to the established facts,[3] and because we feel the court abused its discretion in the employment of a traditionally equitable doctrine.

## I

In Walsh v. Cresent Hill Co., D.C.Mun.App., 134 A.2d 653 (1957), we had occasion to discuss at length the doctrine of *forum non conveniens.* In that case we reviewed the comprehensive opinion of Mr. Justice Jackson in Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) which set forth the standards to be considered in applying *forum non conveniens.* In his discussion Mr. Justice Jackson said: "In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." Id., 330 U.S. at 506–507, 67 S.Ct. at 842. Generally, the

defendant has the burden of establishing a strong case for dismissal, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Id., 330 U.S. at 508, 67 S.Ct. at 843. The rule is not that jurisdiction should be denied unless such denial would work an injustice, but rather that jurisdiction should be taken unless to do so would work an injustice.[4]

In this jurisdiction our highest court has had occasion to consider the applicability of the doctrine with regard to matrimonial disputes. In Curley v. Curley, 74 App.D.C. 163, 165, 120 F.2d 730, 732 (1941), cert. denied, 314 U.S. 614, 62 S.Ct. 114, 86 L.Ed. 494 (1941), the court said: "* * * the public policy of the District of Columbia does not require its courts to take jurisdiction of a matrimonial dispute between two persons who are neither domiciled in the District nor even residents thereof; especially where there is no showing that the welfare of children, rights of property,

---

issue, therefore, whether this forum should be made available in this case should be governed by other considerations. As has been suggested earlier more than one forum may, simultaneously, have jurisdiction over the custody of a child. Such a conclusion, however, suggests the need for flexibility and necessitates the use of restraint by the courts involved. * * * It would appear to place no undue hardship upon plaintiff to require her to seek custody of the child in either the state of the marital domicile (and possibly, even now, the domicile of all the interested parties) or in the state where the child is now located (and possibly domiciled, as may be the father). While this court, with personal jurisdiction over both parents, could order compliance with any order it issued, there is far from any assurance that another state would recognize a decree (and order) rendered by a court in a jurisdiction in which the child was neither physically present nor domiciled.

"Therefore, even assuming the existence of a technical jurisdiction over the subject matter, the minor child, there are at least two other jurisdictions which have a more intimate connection with the status of the child and a more substantial interest in the adjudication of his cus-

tody, and that at least one of these will be relatively certain, as a practical matter, to have the ability to enforce whatever judgment is rendered.

"Therefore, the action for custody should be dismissed on the ground of *forum non conveniens.*

* * * * *

"With respect to the remaining claim for relief on the part of the plaintiff-wife, namely, maintenance for herself, there is no doubt that there is a technical jurisdiction here over the matter. However, there is no compelling policy reason why the courts of the District of Columbia should be burdened by such litigation as this involving parties who have but a slight nexus with the community."

3. North Branch Products, Inc. v. Fisher, 109 U.S.App.D.C. 182, 284 F.2d 611 (1960), cert. denied, 365 U.S. 827, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961); Menendez Rodriguez v. Pan American Life Insurance Co., 311 F.2d 429 (5th Cir. 1962).

4. See Motor Distributors Limited v. Olaf Pedersen's Rederi A/S, 239 F.2d 463, 465 (5th Cir. 1956), cert. denied, 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760 (1957).

or other public interest, in the District are in any way affected." In Melvin v. Melvin, 76 U.S.App.D.C. 56, 57, 129 F.2d 39, 40 (1942), the court restated the Curley rule as follows: "Our view was, and is, that the District Court's undoubted jurisdiction of maintenance suits between nonresidents domiciled elsewhere should not be exercised unless unusual circumstances justify trial here." The court then found that such unusual circumstances were present. Associate Justice Rutledge in his concurring opinion explained these circumstances as follows:

"Within the period of their matrimonial troubles appellant has resided at various times in Virginia, the District of Columbia and Maryland, and has claimed both residence and legal domicil in Arkansas. Since that claim has been rejected, the location of his domicil in any of the jurisdictions where he has resided might be very difficult for appellee to establish in another suit brought in any of them. She therefore has no convenient forum for securing the service of process on a domiciliary basis. Without that she might be unable to secure personal service in Virginia, her own and the last matrimonial domicil, and other jurisdictions might apply the doctrine of forum non conveniens applied in the Curley case, even though service were secured by catching appellant on the run. To decline jurisdiction here and commit appellee to suit elsewhere might therefore be to put her upon a merry-go-round of litigation in other jurisdictions, with no certainty that any of them could or would exercise jurisdiction in her be-

half." (Footnotes omitted.) Id., 76 U.S.App.D.C. at 59, 129 F.2d at 42.

■ The case at bar is strikingly similar to the situation confronting the appellee in Melvin.[5] The continued mobility and elusiveness of the husband makes it anything but clear that he will be amenable to process in the courts of Maryland or North Carolina. Consequently, to dismiss on the ground of forum non conveniens is to disregard the admonition of Mr. Justice Jackson that the doctrine presupposes at least two forums in which the defendant is amenable to process.[6] At the very least, a proper application of the doctrine in this case would have called for either a conditional dismissal with a stipulation that the husband accept service of process in Maryland or a stay of the action pending institution of suit and service of process in Maryland.[7] Rather, the unconditional dismissal by the trial court sets the wife upon a sea of doubt with no remedy or hope that her claim for custody and maintenance will ever be heard on the merits. That the court felt its decree would be ineffective is belied by its own admission that it "could order compliance with any order it issued." By stating it would "place no undue hardship" upon the wife to seek relief in the courts of Maryland or North Carolina the trial court clearly misconstrued the nature of the doctrine.[8] We hold, therefore, that the dismissal of the wife's complaint was error because the standards we have discussed were improperly applied to the established facts.

## II

■ It is well recognized that the objection that an action has been instituted in a forum non conveniens may be made by the court sua sponte.[9] It has also been not-

5. For another comparable situation see Menendez Rodriguez v. Pan American Life Insurance Co., supra, note 3, where the court said: "Indeed, we think it appropriate to note that should this defendant prevail on this dismissal, there is no assurance that a whole new round of jurisdictional jousting would not be open to invitation." 311 F.2d at 433.

6. See also, North Branch Products, Inc. v. Fisher, supra, note 3.

7. See Restatement (Second), Conflict of Laws § 117e. comment e (Tentative Draft No. 4, 1957).

8. See text accompanying note 4, supra.

9. Cf. North Branch Products, Inc. v. Fisher, supra, note 3; Nee v. Dillon, 99 U.S. App.D.C 332, 239 F.2d 953 (1956).

ed that the objection may be made at any time. Nevertheless, since the basis of the objection is not an absolute lack of jurisdiction over the subject matter, but rather the impropriety of the court's exercising jurisdiction, the defense that want of jurisdiction cannot be waived is not strictly applicable.[10] As with other motions addressed to the discretion of the court, certain limitations in the matter of time at which they may be raised are relevant. It has therefore been held that the motion to dismiss is too late if made at the close of trial.[11] It has also been said that a court will not be prompted to exercise its discretion in favor of a defendant who raises the objection to the forum for the first time after the defendant has answered, taken depositions, proceeded to pretrial, and caused the plaintiff to incur expense in preparing for trial.[12]

Another factor which has been considered as significant in applying the doctrine and which bears upon the timeliness of the motion is the factor of public interest. "Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin." Gulf Oil Corporation v. Gilbert, supra, 330 U.S. at 508, 67 S.Ct. at 843. See also, Gross v. Owen, 95 U.S.App.D.C. 222, 221 F.2d 94 (1955); Simons v. Simons, 88 U.S.App.D.C. 180, 187 F.2d 364 (1951), cert. denied, 341 U.S. 951, 71 S.Ct. 1019, 95 L.Ed. 1374 (1951). While this is only one of the factors to be considered in applying the doctrine, whatever force and effect it has is negated by the application of the doctrine at the close of trial. It is not helping to relieve congested court calendars by holding the precise trial which the doctrine in part seeks to avoid, and then claiming inconvenience. We find that the trial court abused its discretion when after months of preparation, motions, pre-trial, and a full hearing consuming two days' time,

it sua sponte dismissed the complaint on the ground of *forum non coveniens*. In conclusion we note that holding the case under advisement for sixteen months was not conducive to the fair and effective administration of justice.

Reversed with instructions to set aside order of dismissal and to enter findings of fact and conclusions of law.

---

10. See Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Col.L.Rev. 1, 3 (1929).

11. Burdick v. Freeman, 120 N.Y. 420, 24 N.E. 949 (1890).

12. Fifth & Walnut v. Loew's, Inc., 76 F. Supp. 64, 67 (S.D.N.Y.1948).