**Robert W. SKIFF, Appellant,**

v.

**Ann H. SKIFF, Appellee.**

**No. 5578.**

District of Columbia Court of Appeals.

Argued April 7, 1971.

Decided May 20, 1971.

Arthur J. Hilland, Washington, D. C., for appellant.

Charles H. Mayer, Washington, D. C., with whom Lewis H. Shapiro, Washington, D. C., was on the brief, for appellee.

Before KERN, NEBEKER and YEAGLEY, Associate Judges.

KERN, Associate Judge:

The parties to this appeal were married, each for the first time, in Washington, D. C. in 1950. They have no children. In 1969 they separated and the husband obtained a divorce, *ex parte*, in Florida. While the husband's divorce suit was pending there the wife commenced an action for separate maintenance in the District of Columbia Court of General Sessions. The husband was personally served and defended in that action. The trial court, after hearing testimony by the parties and their witnesses, entered findings that:

The separation was not caused by any misconduct on the part of the wife,

the husband had failed to support his wife from the time he left her although he was able to do so,

during their 19 years of marriage she had made substantial contributions to the family support,

as of April 15, 1970,[1] his annual income would be $19,704,

the income she could reasonably expect in 1970 from her own sources was "approximately $13,000 to $14,000," and the amount she needed annually to maintain her customary station in life was "on the order of $17,000 to $18,000,"

she is now 50 years of age, suffers from asthma, and has not worked since 1954, and,

he is 46, in good health and employed by the State Department as a foreign service officer. The trial court awarded her support and maintenance in the amount of $200 per month and counsel fees in the amount of $1500.

 The husband, appellant before us, attacks the award of separate maintenance on numerous grounds,[2] only two of which merit extended discussion. Appellant vigorously argues that in view of the evidence that appellee owned securities inherited from her parents of a value of at least $370,000, the trial court abused its discretion in ordering appellant, who had virtually no net worth,[3] to pay any support to appellee. *See* Foley v. Foley, D.C.Mun.App., 184 A.2d 853 (1962).

 We have recognized that the wife's own financial resources constitute *one factor among several* which the trier of fact must evaluate in determining the amount of maintenance, if any, which will be required of a husband. McEachnie v. McEachnie, D.C.App., 216 A.2d 169 (1966); Sheridan v. Sheridan, D.C.App., 202 A.2d 653, 655 (1964); Payton v. Payton, D.C.App., 187 A.2d 899 (1963). However, when all the relevant and material factors are considered upon this record we cannot say that the trial court abused its discretion in awarding appellee maintenance. She had made a substantial contribution[4] to the parties' way of life

1. The case was tried in March 1970.

2. Appellant characterizes the parties as mere "sojourners" here and for that reason argues that the trial court should have declined to exercise jurisdiction over his wife's suit for maintenance. Our statute does not require one who seeks maintenance to be domiciled here and, given the evidence that the parties have owned houses and lived here since their marriage in 1950 except when he was posted abroad, ours was a proper forum for her action. Appellant claims that the issue of the wife's conduct, which was a proper factor to be considered by our trial court in determining maintenance, DeSipio v. DeSipio, D.C.Mun.App., 186 A.2d 624, 626 (1962), was already decided in the Florida litigation where a divorce had been granted on the ground of the wife's "extreme cruelty." But appellee was never served and did not appear in that action and to rule that the issue of her conduct was res judicata by reason of the Florida decree would be in practical effect to ignore the long-established concept of divisible divorce. *See* Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948); Vanderbilt v. Vanderbilt, 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957); Christian v.

Christian, D.C.Mun.App., 187 A.2d 126 (1962). *See also* D.C.Code 1967, § 16–916. Appellant also urges that the trial court's judgment should be vacated because it rests on findings of fact and conclusions of law submitted by appellee and adopted without change by the trial court. The court invited both counsel after trial to submit "[g]ood, full findings of fact * * * in accordance with your theory of this case," and both counsel did so. We cannot say that the court's adoption of one set of proposed findings rather than the other after hearing and weighing the evidence shows an abuse of the decisional process.

3. According to the evidence appellant had no securities, savings account, or realty since he had deeded his interest in their house to appellee prior to their separation. Appellant complains that the trial court failed to decide whether that transfer was accepted by her in lieu of support and maintenance, but there was no evidence of any such acceptance on her part.

4. She had furnished the down payment for their first house which they later sold and bought a new house with its proceeds. They habitually lived on income from her inherited securities as well as his salary.

during their 19-year marriage and there was no evidence that she had failed to meet her wifely obligations. She was 50 years of age and a chronic asthmatic who had no marketable job skill and had not worked in more than 15 years.[5] He is four years younger than she and regularly employed by the State Department in a position that pays more than $19,000 a year. Her anticipated expenses presently exceed her anticipated income and she is not obliged to deplete her inheritance to support herself when her husband is able but refuses to support her. *See* Foley v. Foley, *supra,* 184 A.2d at 855; Klotz v. Klotz, 203 Va. 677, 127 S.E.2d 104 (1962). In the *Foley* case relied upon by appellant, the wife's annual income *exceeded* her expenses and her husband's earning power had been substantially *reduced* because he had developed a heart ailment.

■ Appellant contends that the trial court's finding that appellee may reasonably expect income for 1970 in the amount of $13,000 to $14,000 is without support in the evidence, but we have carefully examined the record and must conclude otherwise. There was testimony that two annuities and a capital investment fund would pay appellee $6600 a year. The amount of dividends and interest her securities would generate in 1970 was estimated variously at anywhere from $6400 to $8000.[6]

We do not by our decision today rule out a further examination and re-evaluation by the trial court of the parties' respective financial positions if appellant in the future demonstrates a change of circumstances. For example, we note testimony by appellee's broker that her holdings are being shifted from speculative, growth-type securities to those which will produce more annual income for her.[7] It may be that what appellee has in fact earned from her investments and actually required for her living expenses during the twelve months between trial and decision of this appeal will be relevant and material to what support and maintenance appellant should have to pay in the future.

■ Appellant also contends that the trial court erred in awarding appellee $175 for counsel fees she incurred in compelling him to answer certain oral interrogatories during the pre-trial dsicovery proceedings.[8] Appellant had refused, on advice of counsel, to answer questions by appellee's attorney concerning the marital difficulties of the parties. Since the pleadings in this action placed in issue whether appellee's conduct caused the separation and since the respective conduct of the parties is always relevant in determining the amount of support and maintenance, *see* DeSipio v. DeSipio, *supra at n. 2,* we conclude under these circumstances that appellant's refusal to answer the questions was "without substantial justification" and the trial court

---

5. She testified that she is taking instruction in typing and other courses at a local university.

6. While the federal income tax returns filed by the parties jointly in prior years showed total dividends and interest on her stock of somewhat more than $10,000 annually, her broker, who had close knowledge of and considerable discretion to act with respect to her securities, projected $8,000 as the maximum which would be earned in 1970.

7. It is not necessary to the disposition of this appeal to determine whether a wife's failure to maximize the annual income from her securities might be analogous to a husband who seeks to reduce the sup-

port he must pay his wife by retiring from gainful employment, *see* Appleton v. Appleton, 191 Pa.Super. 95, 155 A.2d 394 (1959); Grant v. Grant, 61 Misc. 2d 968, 307 N.Y.S.2d 153 (N.Y.C. Family Ct.1969), or by not fully utilizing his earnings capacity. *See* Knutson v. Knutson, 15 Wis.2d 115, 111 N.W.2d 905 (1961).

8. GS Civ.Rule 37(a) provides that the Court shall require the refusing party or deponent and the party or attorney advising the refusal, or either of them, to pay the examining party reasonable attorney's fees if the Court finds that the refusal was without substantial justification.

did not abuse its discretion by making the award. *See* Brunswick Corp. v. Chrysler Corp., 291 F.Supp. 118 (E.D.Wis.1968).

Upon this record we must

Affirm.