Patrick J. CREAMER, Appellant,

v.

Patricia A. CREAMER, Appellee.

Nos. 83–668, 83–709.

District of Columbia Court of Appeals.

Submitted June 13, 1984.

Decided Sept. 19, 1984.

Gregg Schaaf, Washington, D.C., was on brief, for appellant.

Patrick J. Moran, Washington, D.C., was on brief, for appellee.

Before FERREN and ROGERS, Associate Judges, and REILLY, Chief Judge, Retired.

FERREN, Associate Judge:

Appellant, Mr. Creamer, challenges a Family Division judgment awarding his former spouse, Mrs. Creamer, custody of their two minor children, $700 per month in child support, $150 per month for permanent maintenance, $14,754 in arrearages from the court's 1976 *pendente lite* child support order, and attorney's fees. Appellant contends that the trial court: (1) lacked subject matter jurisdiction under D.C.Code § 16–4503 (Supp.1984) to award custody of the children; (2) lacked subject matter jurisdiction to make an award of permanent maintenance under D.C.Code § 16–916(b) (1981); and (3) abused its discretion by exercising jurisdiction over the claims for child support, instead of requiring Mrs. Creamer to pursue them in a Minnesota court. We affirm.

I.

Mr. and Mrs. Creamer were married in Minnesota in 1953. In June 1976, they separated. During the period before their separation, the Creamers owned a home and lived in Silver Spring, Maryland, with their four children born July 10, 1959, August 7, 1962, and July 24, 1965 (twins).

In September 1976, Mrs. Creamer filed an action in the Family Division alleging that Mr. Creamer was living and working in the District of Columbia. She asked the court to award her custody of the children, to grant *pendente lite* and permanent child support, and to order *pendente lite* and permanent maintenance for her own support, pursuant to D.C.Code § 16–916.

At a hearing on November 22, 1976, Mrs. Creamer informed the court that she and her four children had recently moved to St. Paul, Minnesota. She also provided the court with a financial statement itemizing the family's monthly living expenses. Mr. Creamer testified that within the past month he had lost his job as an attorney with the General Services Administration. He told the court that he had no objection to granting Mrs. Creamer custody of the four children.

The trial court awarded Mrs. Creamer custody of the four Creamer children and $750 per month in *pendente lite* child sup-

port (the "1976 order"). The court added, however, that because Mr. Creamer was unemployed, it would make "no finding" at that time regarding Mrs. Creamer's request for separate maintenance.

During the four years after this court order, Mr. Creamer continually failed to meet his child support obligations. Mrs. Creamer obtained two writs of attachment in the District of Columbia against Mr. Creamer's retirement income; She also obtained an order attaching certain of Mr. Creamer's assets in Minnesota. Despite these collection efforts, however, the child support payments continued to be substantially in arrears.

In July 1978, Mr. Creamer filed a motion with the Family Division requesting retroactive modification of the court's 1976 order—effective July 1977—to reduce his child support obligations. The basis for this motion was the fact that the oldest Creamer child had turned 18 in July 1977. The trial court rejected Mr. Creamer's request for immediate relief, ruling that under District of Columbia law he had a legal duty to support each child until the age of 21. *See Rittenhouse v. Rittenhouse*, 461 A.2d 465, 466 (D.C.1983) (per curiam); *Nelson v. Nelson*, 379 A.2d 713, 715 (D.C. 1977). The court did, however, modify the 1976 order to provide for a $187.50 reduction in Mr. Creamer's monthly payments as each child reached the age of 21. The court also determined that the child support arrearage as of the date of its order was $12,440.

In October 1979, Mr. Creamer obtained an *ex parte* divorce from a Virginia court based on his voluntary separation from Mrs. Creamer for a period exceeding one year. Although the divorce decree recognized that four children had been born of the marriage, it did not address the issue of child support. Nor did the Virginia court make any determination relevant to alimony or maintenance for Mrs. Creamer.

In February 1983, Mr. Creamer filed a "Motion to Dismiss" with the Family Division, arguing that the Virginia *ex parte* divorce had terminated all of his obligations to provide *pendente lite* child support under the 1976 order. He asked the court to vacate the order *nunc pro tunc* to October 1979 (the date of the Virginia divorce decree). Mrs. Creamer responded by filing a motion on March 17, 1983 requesting that the Family Division determine the amount of arrearages due under the 1976 order; award permanent child support for the two youngest Creamer children who still needed support; and award separate maintenance for her own support.

After a hearing on May 25, 1983, Judge Kennedy denied Mr. Creamer's motion to vacate the 1976 order *nunc pro tunc*. Relying on the "doctrine of divisibility of divorce," Judge Kennedy ruled that, because the Virginia court lacked personal jurisdiction over Mrs. Creamer, the *ex parte* divorce could not affect any personal rights arising from the 1976 order. *Hopson v. Hopson*, 95 U.S.App.D.C. 285, 288–92, 221 F.2d 839, 842–46 (1955) (en banc); *see Estin v. Estin*, 334 U.S. 541, 543–49, 68 S.Ct. 1213, 1215–18, 92 L.Ed. 1561 (1948). He also refused to vacate the 1976 order prospectively, reasoning that the *pendente lite* relief provided by the order would be superseded as soon as the court had an opportunity to rule on Mrs. Creamer's March 17 request for permanent relief. Although Mr. Creamer noted an appeal, no aspect of Judge Kennedy's ruling is challenged here. Appeal No. 83–709 is accordingly dismissed.

The next day, Judge McArdle held a hearing on Mrs. Creamer's March 17 motion. At the outset, counsel for Mr. Creamer announced that his client was entering a "special appearance" solely for the purpose of contesting the subject matter jurisdiction of the Family Division. Counsel stated three grounds for this jurisdictional challenge: (1) because Mrs. Creamer relied on her 1976 complaint, rather than file a new complaint after issuance of the *ex parte* divorce in 1979, the court had no jurisdiction to consider an award of permanent maintenance under D.C.Code § 16–916(b);

(2) because Mrs. Creamer and the Creamer children had been domiciled in Minnesota for nearly seven years, Minnesota was the proper forum for determination of child support issues; and (3) because Mr. Creamer now alleged that he never had resided in the District of Columbia, the jurisdiction of the Family Division was strictly limited to granting the relief to which Mr. Creamer had consented in 1976; *i.e.*, because of his non-residency, the court had no jurisdiction to expand or modify the relief granted by the 1976 order.[1] Mr. Creamer presented no affidavit or other evidence in support of his oral motion to dismiss for lack of jurisdiction.

After hearing testimony from Mrs. Creamer and reviewing written evidence of the arrearages due under the 1976 order, Judge McArdle rejected Mr. Creamer's jurisdictional challenges and awarded Mrs. Creamer custody of the two minor children, $700 per month in child support, $150 per

month in permanent maintenance, $14,754 in arrearages in *pendente lite* child support, and attorney's fees.

## II.

On appeal, Mr. Creamer first raises a question not presented to the trial court: whether the Family Division had subject matter jurisdiction to award Mrs. Creamer custody over the two minor children under the Uniform Child Custody Jurisdiction Act (UCCJA). D.C.Code §§ 16–4501–4524 (Supp.1984); 9 U.L.A. 116 (1979). He premises this argument on the fact that the UCCJA became law in the District on March 10, 1983, 30 D.C.Reg. 1340 (1983), one week before Mrs. Creamer filed the motion which led to the court order at issue here, but well after the Family Division's original assertion of jurisdiction over the custody of the Creamer children.[2] We need not determine the applicability or effect of the UCCJA here, however, because

---

1. Although appellant, in his brief, repeats his contention that he has never lived in the District of Columbia, and thus asserts that the jurisdictional basis for the 1976 order is "uncertain," he does not argue on appeal that his non-residency provides a basis for us to reverse Judge McArdle's jurisdictional ruling. Accordingly, appellant's third argument to the trial court is not before us. We nonetheless note that Judge McArdle made an express finding that Mr. Creamer "was residing in the District of Columbia at the time of filing the suit herein." A review of the record reveals that this finding is supported by the uncontradicted testimony of Mrs. Creamer, as well as by Mr. Creamer's conduct throughout the course of this litigation.

2. Before adoption of the UCCJA, there was a well-settled rule in this jurisdiction that "courts have continuing jurisdiction to modify custody arrangements in the best interests of the children." *Rice v. Rice*, 415 A.2d 1378, 1383 (D.C. 1980); *see Emrich v. McNeil*, 75 U.S.App.D.C. 307, 310, 126 F.2d 841, 844 (1942) (footnotes omitted). Moreover, this power to modify a custody order was not cut off simply because, subsequent to the original custody determination, one of the parents obtained an *ex parte* divorce in some jurisdiction other than the District of Columbia. *Feick v. Feick*, 95 U.S.App. D.C. 24, 25, 217 F.2d 857, 858 (1954) (per curiam).

The UCCJA was drafted in an effort to "deter child snatching" by "limiting the power of courts to legitimize the de facto custody posses-

sion by parents who take children across state lines in order to obtain an initial custody determination or to seek a modification of an existing decree." *Albergottie v. James*, 470 A.2d 266, 269 (D.C.1983). As a means of furthering this purpose, the Act attempts to "[a]void jurisdictional competition and conflict" by "[a]ssur[ing] that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his or her family have the closest connection." D.C.Code § 16–4501(a)(1) & (3); *see, e.g., Hegler v. Hegler*, 383 So.2d 1134, 1136 (Fla.Dist.Ct.App.1980). This preference for litigating custody issues in the child's "home state" is central to the UCCJA, *see, e.g., Gaines v. Gaines*, 566 S.W.2d 814, 816–18 (Ky.Ct.App. 1978), and may in some cases modify the traditional "continuing jurisdiction" principle. *See, e.g., Hafer v. Superior Court*, 126 Cal.App.3d 856, 862, 179 Cal.Rptr. 132, 135–36 (1981); *see generally* R. CROUCH, INTERSTATE CUSTODY LITIGATION: A GUIDE TO USE AND COURT INTERPRETATION OF THE UCCJA 3–9, 13–15, 30–33 (1981). Accordingly, Mr. Creamer attempts to rely on the argument that, although "[c]ourts which render a custody decree normally retain continuing jurisdiction to modify the decree," if "all persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere." UCCJA § 14, Commissioner's Note, 9 U.L.A. 154 (1979).

a review of the record indicates that, even if the UCCJA were to apply—an issue we do not decide—the question of child custody is now moot.

■ More specifically, although the two youngest Creamer children were both minors at the time Judge McArdle issued the custody order challenged here, they are now 19 years old. D.C.Code § 30–401 (Supp.1984) provides that, as of July 22, 1976, "the age of majority in the District of Columbia shall be 18 years of age, except that this act shall not affect any common law or statutory right to child support." The Family Division's authority to determine child custody is distinct from its authority to award child support. *See* D.C. Code § 16–4502(1) (Supp.1984). Thus, while the exception clause in § 30–401 permits the Family Division to award child support to offspring past the age of 18, the court ordinarily may not award parents custody of offspring who have reached the age of majority. *See Theresa H. v. Pasquale G.*, 102 Misc.2d 759, 763, 424 N.Y. S.2d 652, 655 (N.Y.Fam.Ct.1980).[3] Because the two youngest Creamer children are no longer subject to Judge McArdle's custody determination, any questions concerning the validity of that order are no longer before us.

### III.

■ Appellant next argues that the trial court erred in awarding Mrs. Creamer permanent maintenance, on the basis of her 1976 complaint, without requiring her to file a separate complaint seeking such relief after the date of the *ex parte* Virginia divorce in 1979. This argument is based on overly rigid reading of D.C.Code § 16–916 (1981).

D.C.Code §§ 16–911 to 16–914 authorize the Family Division to order child support and/or alimony in cases in which the Division has granted a decree of divorce, or where an action for divorce is pending with the Division. Section 16–916, on the other hand, authorizes the Family Division to order a husband or wife to maintain a needy spouse, former spouse, or minor child in situations in which the couple has separated, but no divorce action has been filed with or adjudicated by the Division.

Section 16–916(a) is a general provision governing rights of needy spouses and minor children:

> (a) Whenever a husband or wife shall fail or refuse to maintain his or her needy spouse, minor children, or both, although able to do so, or whenever any parent shall fail or refuse to maintain his or her children by a marriage since dissolved, although able to do so, the court, upon proper application and upon a showing of genuine need of a spouse, may decree, pendente lite and permanently, that such husband or wife shall pay reasonable sums periodically for the support of such needy spouse and of the children, or such children, as the case may be, and the court may decree that he or she pay suit money, including counsel fees, pendente lite and permanently, to enable plaintiff to conduct the case.

Section 16–916(b) provides for the special situation in which one party to a marriage has obtained an *ex parte* divorce from a court other than the Family Division:

> (b) Whenever a former spouse has obtained a foreign ex parte divorce, the court thereafter, on application of the other former spouse and with personal service of process upon such former spouse in the District of Columbia, may decree that he or she shall pay him or her reasonable sums periodically for his

---

**3.** We leave to the informed discretion of the Family Division questions concerning the proper means of drafting child support orders to ensure that child support payments continue to inure to the benefit of offspring who are no longer the subject of a custody order. In this case, for instance, Mrs. Creamer indicated to the court that she would be responsible for her two daughters' expenses even after they entered college. Under these circumstances, the trial court appropriately ordered that child support be payable to Mrs. Creamer on their behalf until the two daughters' 21st birthdays.

or her maintenance and for suit money, including counsel fees, pendente lite and permanently, to enable plaintiff to conduct the case.

Mr. Creamer contends that the motion filed by Mrs. Creamer in March 1983, requesting an award of permanent maintenance, was inadequate to warrant relief under § 16–916(b). In doing so, he does not argue that the motion provided insufficient notice of Mrs. Creamer's intention to seek permanent maintenance. Instead, he has seized upon the wording of the statute—which states that once an *ex parte* divorce has been obtained, the court may "thereafter, on application of the former spouse" award either *pendente lite* or permanent maintenance—and argues that § 16–916(b) relief may be granted only when the plaintiff files a new complaint after the grant of the *ex parte* divorce. A plaintiff, he says, may not rely on a pre-divorce complaint for permanent maintenance.

We reject this unnecessarily rigid reading of the statute. Although § 16–916(b) addresses the more common situation in which a former spouse first petitions the Family Division for relief after an *ex parte* divorce has been granted in a foreign jurisdiction, we can see no reason to deny relief for failure to file of a second complaint in a case such as this one. We hold that when, as here, a spouse files a complaint seeking permanent maintenance under § 16–916(a), and later seeks a modification of the Family Division's order after a court in another jurisdiction has awarded the other spouse an *ex parte* divorce, the Family Division may grant relief under § 16–916(b) as long as the notice requirements of § 16–916(b) are met. There is no need for the petitioning former spouse to file a second complaint.[4]

The legislative history of § 16–916 strongly supports this interpretation. Before 1965, this section did not contain a provision specifically dealing with the maintenance of a former spouse following an *ex parte* divorce. Instead, it consisted only of the general provision for the support of needy spouses and minor children which is now § 16–916(a).[5] A brief review of the case-law under § 16–916, before the 1965 addition of § 16–916(b), is illuminating here.

In *Hopson, supra,* 95 U.S.App.D.C. at 290, 221 F.2d 839, at 844, a wife successfully filed a complaint for permanent maintenance after her husband had obtained an *ex parte* divorce in another jurisdiction. On appeal, the husband argued that, under the pre-1965 version of the statute, the court had no jurisdiction to grant relief to a former spouse after a court in another jurisdiction had issued an *ex parte* divorce. The court of appeals rejected this argument, holding that even if the statute did not authorize relief for a former spouse, "the court has general equity powers, which are not supplanted by the statute, and which are broad enough in appropriate circumstances to support a grant of maintenance after an *ex parte* divorce." *Id.*

In *Meredith v. Meredith,* 96 U.S.App. D.C. 355, 226 F.2d 257 (1955), the court confronted a question similar to the one presented here. Mrs. Meredith filed an action in the District of Columbia seeking maintenance from her estranged husband. While this action was pending the husband obtained an *ex parte* divorce in Texas. The trial court then dismissed Mrs. Meredith's complaint, ruling that the *ex parte* divorce terminated its jurisdiction to grant the relief requested. In reversing this ruling, the court of appeals relied on *Hopson, supra,* for the proposition that "the Texas

---

**4.** We do not consider whether the grounds for an award under § 16–916(b) are necessarily the same as those under § 16–916(a).

**5.** *See* An Act to Establish a District of Columbia Code, § 980, 31 Stat. 1189, 1346 (1901); D.C. Code § 16–415 (1940). This general provision

has been recodified and the language amended slightly on several occasions since 1901. The basic thrust of the provision, however, has not changed and has been carried forward into today's § 16–916(a).

decree, even though valid as to the marital status of the Merediths and the consortium rights of both spouses, could not destroy Mrs. Meredith's right to claim maintenance, a financial right." *Id.* at 357, 226 F.2d at 259. The *Meredith* court further noted "that this court has long and many times held that equity will compel a father to support his children and his wife quite apart from apparent restrictions in the statute." *Id.* Although the court recognized that Mrs. Meredith had filed her complaint when she and Mr. Meredith were married, and had based her claim for maintenance on the District of Columbia statute, it held that the complaint stated a claim upon which equitable relief could be granted even after the *ex parte* divorce.

These cases are highly significant for our interpretation of § 16–916(b). The Senate Committee report notes that § 16–916(b), added in 1965,[6] "codifies the maintenance rights of a former wife as such rights are presently defined in the existing case law of the District of Columbia." S.Rep. No. 638, 89th Cong., 1st Sess. 5 (1965); *see also* H.R.Rep. No. 24, 89th Cong., 1st Sess. 2–3 (1965). Thus, the rule set forth in *Meredith, supra* (a complaint filed under the pre-divorce maintenance provisions of § 16–916(a) will support a grant of relief even after an *ex parte* divorce has been obtained) has been carried forward into § 16–916(b). *See Skiff v. Skiff,* 277 A.2d 284, 285–86 (D.C.1971).

## IV.

Finally, Mr. Creamer contends that the trial court abused its discretion in exercising jurisdiction over Mrs. Creamer's claims for child support, instead of dismissing

these claims and recommending that Mrs. Creamer seek child support from a Minnesota court. Mr. Creamer presented a similar argument to the trial court as part of his oral motion to dismiss for lack of subject matter jurisdiction, arguing that Minnesota was "the proper forum due to the fact that that is where everyone [except Mr. Creamer] is domiciled." The trial court correctly recognized that Mr. Creamer had mischaracterized this argument as a jurisdictional challenge and thus properly ruled that there was no jurisdictional basis for dismissing the child support claims. The court, itself, however, also incorrectly labeled Mr. Creamer's argument, construing it as a motion to dismiss for improper venue and ruling that such a motion had been "waived as a matter of law by not being timely raised."

The real thrust of Mr. Creamer's motion was *forum non conveniens,* since he asked the trial court to exercise its discretion to dismiss a claim over which it had jurisdiction, in deference to the courts of another jurisdiction which allegedly were better situated to adjudicate the claim. *See Arthur v. Arthur,* 452 A.2d 160, 161–62 (D.C.1982); *Dorati v. Dorati,* 342 A.2d 18, 19–21 (D.C.1975).[7] Such a motion is distinguishable both from a motion to dismiss for lack of subject matter jurisdiction and from a motion to transfer or dismiss for improper venue.[8] *See Driscoll v. New Orleans Steamboat Co.,* 633 F.2d 1158, 1159 n. 1 (5th Cir.1981); *Fifth & Walnut, Inc. v. Loew's, Inc.,* 76 F.Supp. 64, 67 (S.D.N.Y.1948); *see generally* 15 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3828 (1976). As the trial judge recognized, a motion seeking the transfer or dismissal of a claim on

---

**6.** An Act to Amend Part II. of the District of Columbia Code Relating to Divorce, Legal Separation, and Annulment of Marriage in the District of Columbia, Pub.L. No. 89–217, § 3, 79 Stat. 889 (1965).

**7.** A statutory basis for this type of motion is provided by D.C.Code § 13–425 (1981):

When any District of Columbia court finds that in the interest of substantial justice the

action should be heard in another forum, the court may stay or dismiss such civil action in whole or in part on any conditions that may be just.

**8.** Because all of the District of Columbia courts are located in a single place, there is no need for a venue statute in this jurisdiction. Accordingly, improper venue is never a ground for dismissal in the Superior Court.

grounds of improper venue ordinarily is waived if not raised in the defendant's first motion or responsive pleading. *See* FED.R.CIV.P. 12(h). In contrast, a *forum non conveniens* "objection may be made at any time." *Wilburn v. Wilburn,* 192 A.2d 797, 801 (D.C.1963); *see Fifth & Walnut, Inc., supra,* 76 F.Supp. at 67. Thus, the trial court was incorrect in ruling that, by waiting until the morning of trial to raise his objection, Mr. Creamer had waived any opportunity to request that the court defer to a Minnesota tribunal on the child support claims.

■ Despite this error, we do not find it necessary, on the facts presented here, to remand this case for the trial court's consideration of whether dismissal of Mrs. Creamer's child support claims was warranted on *forum non conveniens* grounds—a question which Mr. Creamer never squarely put before the trial court. We conclude that, even if the trial court had recognized Mr. Creamer's mislabeled motion as a *forum non conveniens* argument, it would have been constrained, as a matter of law, to deny such a motion and thus to exercise jurisdiction as it did. Several aspects of this case support our conclusion.

First, aside from simply asserting that, because Mrs. Creamer and her children are now domiciled in Minnesota, a Minnesota court is the "proper forum" for Mrs. Creamer's child support claims, Mr. Creamer has presented no reasons—either at trial or on appeal—why the Family Division is an inconvenient or inappropriate forum. He has not suggested that there are any witnesses or records that were unavailable to him at trial. Nor has he argued that the adjudication of the child support claims in the District of Columbia created any unnecessary delay, expense, or administration difficulties.

■ This court has set forth a number of factors—related to the "private interests of the litigant," as well as the "public interest" in fair and efficient litigation—that may support dismissal of a claim on *forum non conveniens* grounds. *See Arthur, supra,* 452 A.2d at 161. But, it is well settled that "a defendant claiming the benefit of the doctrine of *forum non conveniens* bears the burden of establishing that the balance of equitable considerations is strongly in his favor." *Dorati, supra,* 342 A.2d at 20. Unless the defendant meets this heavy burden, "the plaintiff's choice of forum will not be disturbed." *Id.* By failing to articulate any basis for his *forum non conveniens* argument, in accordance with the factors set forth by this court, *see Arthur, supra,* Mr. Creamer has failed to provide any basis for a trial court finding that he has carried his burden of showing that Mrs. Creamer's choice of forum was inappropriate.

■ Furthermore, Mr. Creamer did not raise his *forum non conveniens* argument until the morning of trial, after Mrs. Creamer had traveled to the District and her attorney had prepared for trial. Although the trial court was incorrect in suggesting that such an argument is waived as a matter of law if not asserted before the day of trial, we have recognized that " 'a court will not be prompted to exercise its discretion in favor of a defendant who raises the objection for the first time after the defendant has answered, taken depositions, proceeded to pretrial and caused the plaintiff to incur expense in preparing for trial.' " *Arthur, supra,* 452 A.2d at 162 (quoting *Wilburn v. Wilburn,* 192 A.2d 797, 801 (D.C.1963)).

■ Finally, we have noted that one of the "private interests" that should be considered in determining whether a motion to dismiss for *forum non conveniens* should be granted, is "the enforceability of a judgment once obtained." *Carr v. Bio-Medical Applications of Washington, Inc.,* 366 A.2d 1089, 1092 (D.C.1976). This factor weighs heavily against granting the *forum non conveniens* motion in this case, given the history of Mr. Creamer's failure to make court-ordered payments to support his children and the fact that Mr. Cream-

er's principal source of income is government retirement payments which are made from the District. Under the circumstances of this case, we conclude that the trial court did not err in exercising jurisdiction over Mrs. Creamer's child support claims; indeed, it would have been an abuse of discretion to grant Mr. Creamer's motion.

Appeal No. 83–668 *Affirmed;*

Appeal No. 83–709 *Dismissed.*