Gina CRESTA, for herself and as Administratrix for the Estate of Richard Cresta, Appellants,

v.

The NEUROLOGY CENTER, P.A., and the Neurology Center, P.C., and Marvin C. Korengold, and David Satinsky, and Charles M. Citrin, Appellees.

No. 86–16.

District of Columbia Court of Appeals.

Argued Feb. 2, 1988.
Decided April 12, 1989.

---

Edward L. Genn, Washington, D.C., for appellants.

James P. Salmon, Upper Marlboro, Md., for appellees.

Before ROGERS,[1] Chief Judge, and MACK and FERREN, Associate Judges.

PER CURIAM:

Gina Cresta, party-appellant and administratrix for the estate of the deceased appellant Richard Cresta, contends that the trial court, in its failure to weigh and apply factors of sufficient contacts within this jurisdiction as well as private and public interests, erroneously dismissed the suit against appellees, The Neurology Center, P.A., The Neurology Center, P.C., Marvin C. Korengold, David Satinsky, and Charles M. Citrin on the grounds of *forum non conveniens*. In particular, appellant argues that appellees did not, on this record, meet the heavy burden of establishing compelling reasons and forum inconvenience to support their motion for dismissal. We agree and reverse.

## I.

In the fall of 1980, Richard and Gina Cresta and their children moved from Massachusetts to the Washington, D.C. area so that Richard could attend George Washington University. According to the Crestas' complaint, on November 26, 1980, while Mr. Cresta was in Massachusetts on Thanksgiving vacation, he was struck in the head with a broomstick by another individual. Mr. Cresta was initially treated for his injuries at Massachusetts General Hospital; when he returned to the District of Columbia, he received further medical treatment at Georgetown University Hospital. His symptoms, however, persisted, and Mr. Cresta sought additional help from the appellee Neurology Center on or about December 17 or 18, 1980. His complaint alleges that the appellees diagnosed his condition as "post-concussion syndrome," advising him that his symptoms would disappear in time. The complaint further asserts that in the ensuing months, when his

---

1. Judge Rogers was an Associate Judge at the time of argument. Her status changed to Chief Judge on November 1, 1988.

symptoms did not abate, Mr. Cresta telephoned the appellees on various occasions to inform them of his condition and that they continued to offer similar assurances. In October 1982, twenty-two months after his initial consultation, Neurology Center physicians performed certain additional tests and determined that Mr. Cresta was suffering from a brain tumor. On September 12, 1985, Richard Cresta died.

When the Crestas first arrived in the Washington, D.C. area in August 1980, they took up residence in Alexandria, Virginia. An affidavit filed by the Crestas states that, to the best of their recollection, they subsequently moved into a Holiday Inn in Washington (where Mr. Cresta was working part-time) in January 1981. In September 1981, they moved again, to 625 10th St., N.E. in the District of Columbia. In September 1981, they also began to receive Aid to Families with Dependent Children (AFDC) benefits through the District of Columbia.

Mr. Cresta was treated as an outpatient at Georgetown University Hospital on December 4, 1980, March 25, 1981, March 31, 1981 and May 5, 1981. He later received inpatient care at George Washington University Medical Center from October 18, 1982 to December 24, 1982 and from January 24, 1983 to February 23, 1983. As a result of his condition, Mr. Cresta eventually withdrew from school and the appellants returned to Massachusetts in or about February 1983.

The individual appellees are, according to their respective affidavits, all residents of Montgomery County, Maryland. The Neurology Center, P.A. is a Maryland professional association, but, since 1979, has also possessed a certificate of authority to do business in the District of Columbia as the Neurology Center, P.C. The Neurology Center operates three offices, one in Chevy Chase, Maryland, one at 2141 K Street in the District of Columbia, and one in Rockville, Maryland. The appellees assert that their examinations and testing of Mr. Cresta *all* occurred at their Chevy Chase office, although the appellants remembered having their initial consultation with Dr. Satin-

sky in the K Street office. Mr. Cresta's phone calls were, as far as can be determined, all made to Dr. Satinsky at the Chevy Chase office.

On December 16, 1983, Richard and Gina Cresta filed a complaint based on claims of medical malpractice, negligence, breach of warranty of contract, and misrepresentation against appellees, Neurology Centers, *et al.* In the complaint, the Crestas contended that appellees did not provide proper neurological and neuroradiological services to Richard and failed to make proper and timely tests to discover the existence of a brain tumor. On February 8, 1984, appellees moved for dismissal on the grounds of *forum non conveniens.* In support of this motion, appellees contended that "since the wrongs alleged in [appellants'] complaint occurred in the state of Maryland, the common and statutory law of the state of Maryland controls all substantive issues in this case." Suggesting that appellants were non-residents and that the incident occurred outside the District of Columbia, appellees argued that they were subject to suit "in the jurisdiction where the incident occurred and the law of the place of the incident governs" and "the busy courts of this jurisdiction [should] not be employed to resolve litigation which properly lies in another jurisdiction." After discovery and the completion of two status conferences, on September 17, 1984, argument was heard on appellees' motion to dismiss. On March 18, 1985, the trial court granted appellees' motion to dismiss and accordingly entered an order.

In its order, the trial court stated that "plaintiffs [appellants], husband and wife, are, as their complaint reflects, residents of Watertown, Massachusetts. The individual defendants [appellees] are residents of the state of Maryland. The corporate defendant, Neurology Center, P.A. is a Maryland professional corporation which has offices in Bethesda and Rockville, Maryland and in the District of Columbia." The trial court also noted that "[a]t all times germane to the complaint, the male plaintiff was a student at George Washington University. His permanent residence was Massachusetts." In framing the jurisdictional issue

before it, the trial court stated that "[t]he sole issue is whether plaintiffs, who are non-residents of the District and who, when living in the District, were here only on a temporary basis, *i.e.*, because the male plaintiff was a student at George Washington University, should be permitted to utilize the services of the Superior Court of the District of Columbia because of alleged negligence of the defendants in the performance of services ... in Maryland." The trial court emphasized the fact that the tortious conduct occurred in Maryland and concluded: "the limited resources of the Superior Court should not be subjected to the demands of this case. Plaintiffs [appellants] are not residents of the District. The individual defendants [appellees] are not residents of the District of Columbia. The plaintiffs [appellants] seek to utilize the services of the personnel of the Superior Court in order to avoid the procedure provided by the laws of Maryland with respect to malpractice actions.... [I]t [allowing the claim to be heard] could open the Superior Court to a flood of litigation by non-residents of the District against non-resident doctors for alleged tortious conduct ... which occurred outside the District, simply because those doctors may also transact business in the District with respect to other persons." ·

The Crestas then filed a motion, on March 28, 1985, to reconsider, amend, or alter the trial court's order. This motion was denied on November 4, 1985. When Richard Cresta died, his wife, Gina, was substituted as a party plaintiff-administratrix for the purposes of this appeal.

The trial court specifically focused on appellants' residency at the time the complaint was filed (*i.e.*, Massachusetts) and the situs of the injury (*i.e.*, Maryland, where the alleged failure to provide proper neurological services occurred), instead of considering all significant contacts (in addition to residency and the situs of the injury) within this jurisdiction. In exercising its broad discretionary power, the trial

court must weigh the private and public interests underlying the doctrine of *forum non conveniens*.

## II.

The decision to grant or deny a motion to dismiss on the grounds of *forum non conveniens* is committed to the sound discretion of the court and will not be overturned absent a clear abuse of discretion. *See Asch v. Taveres*, 467 A.2d 976, 978 (D.C. 1983) (citing *Cockrell v. Cumberland Corp.*, 458 A.2d 716, 718 (D.C.1983)); *Mobley v. Southern Railroad Co.*, 418 A.2d 1044 (D.C.1980); *accord Carr v. Bio–Medical Applications of Washington Inc.*, 366 A.2d 1089 (D.C.1976). While the trial court has broad discretionary power in its determination of *forum non conveniens* issues, this power is nevertheless limited by the heavy burden of proof upon a defendant who moves the court for dismissal under this procedural doctrine, *see Deupree v. Le*, 402 A.2d 428, 429 (D.C.1979), and an independent evaluation by this court of the private and public interests ennunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *accord Sartori v. Society of American Military Engineers*, 499 A.2d 883, 885 (D.C.1985); *see, e.g., Asch v. Taveres, supra*, 467 A.2d at 978; *Cohane v. Arpeja–California, Inc.*, 385 A.2d 153, 156 (D.C.), *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978). We find that appellees did not meet the heavy burden of proof of establishing compelling reasons and forum inconvenience that would require dismissal. Under the principles outlined in the seminal case of *Gulf Oil Corp. v. Gilbert, supra*, we conclude that the trial court abused its discretion in dismissing appellants' claim on the grounds of *forum non conveniens*.

■ "Under the doctrine of *forum non conveniens*, a court that has jurisdiction of the person and subject matter,[2] and that is a court of proper venue, may nevertheless decline to exercise its jurisdiction in a given

2. The jurisdictional issue is the least complex factor in the instant case, for there is no doubt that the District of Columbia Superior Court has jurisdiction over Neurology Centers, *et al.* The

trial court noted: "[t]here is no question that the defendants [appellees] are subject to jurisdiction here in the District of Columbia. The corporation does business here."

case, *if that court would be a seriously inconvenient forum."* CASAD, ROBERT C., JURISDICTION IN CIVIL ACTIONS ¶ 1.04 at 1–18 (1983) (emphasis added). The trial court reasoned that since the tortious conduct (*i.e.,* failure to provide proper neurological services and conduct timely examinations to discover a brain lesion or tumor) occurred in Maryland, the complaint should be heard in that jurisdiction: "[b]ecause of the heavy caseload, both civil and criminal, of the Superior Court, the residence of the plaintiffs and of the individual defendants, and the fact that the alleged tortious conduct of the defendants [appellees] occurred in Maryland, the Court will grant the motion ... to dismiss." This rationale gives undue weight to isolated factors (some open to dispute on this record) and totally ignores other significant factors (including party contacts within this jurisdiction) that militate against dismissal on *forum non conveniens* grounds. In *Kaiser–Georgetown Community Health Plan, Inc. v. Stutsman,* 491 A.2d 502 (D.C.1985), this court stated that "we need not give controlling significance to the fact that the misdiagnosis of plaintiff's disease ... occurred [in Maryland]. A tort 'need not occur within a particular jurisdiction for that jurisdiction to be connected to the occurrence....' " *Id.* at 507–08 (quoting *Allstate Insurance Co. v. Hague,* 449 U.S. 302, 314 & n. 19, 101 S.Ct. 633, 641 & n. 19, 66 L.Ed.2d 521 (1981) (plurality opinion)). Thus, while the situs of an injury is a factor to be considered when applying the doctrine of *forum non conveniens,* it is not the sole determinant in our analysis. *See also Asch v. Taveres, supra,* 467 A.2d at 979 (citing *Washington v. May Department Stores,* 388 A.2d 484, 487 (D.C.1978) ("[t]his factor [residency], while not dispositive, is certainly entitled to considerable weight"). Moreover, given the facts of this case, we are not prepared to accept the suggestion that this is a case of forum shopping in which a plaintiff, without establishing any sufficient contacts within the forum, seeks to initiate an action based solely on the availability of the forum as a favorable (procedural) alternative to others where the action could have been brought.

This record illustrates that both appellants and appellees had significant contacts with the District of Columbia. As to the jurisdictional contacts, it is undisputed that the deceased appellant, Richard Cresta, was a student at George Washington University beginning in August 1980. The trial court, in its order, stated that both appellants and their children "resided, variously, in the District of Columbia and in Virginia during times relevant hereto." In September 1981, as noted above, appellants moved to 625 10th Street, N.E. and resided at this address until 1983. Only because of his illness did appellant return to Massachusetts, his original place of residence, in 1983.

While appellants and appellees dispute where the initial medical consultation occurred—in the District of Columbia or Maryland—there is no question that Mr. Cresta received medical treatment, as an outpatient, from Georgetown University Hospital and, as an inpatient, from George Washington University Medical Center. Appellants contend that such hospitalizations and visits "resulted from consultation with appellee, Dr. Satinsky, who has practiced at the aforementioned hospitals." On the other hand, Dr. Satinsky, in a signed affidavit, stated that he had seen patients at hospitals located in the District of Columbia in the last five years but "he had treated no one as an out-patient during [this] period."

Perhaps the most significant contact that appellants had within the District of Columbia was their receipt of AFDC grants commencing in the fall of 1981, which confirms their residency. The deposition testimony of T.O. Harris, judicial liaison officer and special assistant for the Department of Human Services, establishes that appellants received benefits until March 1983.

Appellees' contacts are also substantial. As noted, the Neurology Center is a District of Columbia corporation located at 2141 K Street.[3] The deposition testimony

---

**3.** Appellees argue that since the medical examinations and diagnosis occurred in Maryland, "the Crestas' only contact with the forum is that Mr. Cresta was treated in the District of Colum-

of Arnold W. Mitchell, administrator for the Neurology Center, underscored the fact that each office of the Neurology Center is viewed as a component of a single corporate entity. Mr. Mitchell also testified that the K Street office accounted for thirteen percent (13%) of the Neurology Center's gross income. Appellees also failed to rebut appellants' contention that since 34.6 percent of the calls in 1980 were to District of Columbia exchanges (this percentage was gleaned from the Neurology Center's record file in Chevy Chase), "something in the range of 35 to 50 percent of the Neurology Clinic's business was in the District." Furthermore, it was established, using Neurology Center records, that "of the total of thirty-one (31) medical contacts in 1980 [by doctors in the Maryland office], thirty (30) were in the District of Columbia at the medical society, at its hospitals, and the like." Finally, the Neurology Center, according to its records, has had significant contact with the District of Columbia courts: "of the seventeen (17) trial alerts ... in 1980, eleven (11) were in the District of Columbia." *See World–Wide Volkswagen Corp. v. Woodson, supra* note 3, 444 U.S. at 297, 100 S.Ct. at 567 (citing *Kulko v. California Superior Court,* 436 U.S. 84, 97–98, 98 S.Ct. 1690, 1699–1700, 56 L.Ed.2d 132 (1978)); *Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977) ("it [foreseeability that is critical to due process] is that the [appellees'] conduct and connection with the forum State are such that he should reasonably anticipate being haled into court

there"); *accord Sartori, supra,* 499 A.2d at 886 ("[i]ndeed, as a District of Columbia corporation, it could hardly argue that this is not a forum in which it expects litigation ... and hence, is an inconvenient forum"). On this record, it is clear that both appellants and appellees have contacts in the District of Columbia.

### III.

■ The "purpose of the doctrine of *forum non conveniens* ... is to avoid litigation in a *seriously inconvenient forum,* rather than to ensure litigation in the most convenient forum." *See* CASAD, *supra,* ¶ 1.04 at 1–20 (emphasis added). Thus, in applying the doctrine of *forum non conveniens,* we must consider the private interest of the litigant and the public interest. *See Asch v. Taveres, supra,* 467 A.2d at 978 (citing *Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. at 508, 67 S.Ct. at 843).

The Supreme Court, in *Gulf Oil Corp. v. Gilbert, supra,* articulated the bedrock principles which govern the outcome of this case. In analyzing the private interests of the litigant, the Court noted:

Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make a trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a

bia by third parties for injuries allegedly caused by the tort." We find this argument unpersuasive. This appeal turns on a determination of forum convenience after an assessment of the private and public interests of the case. Here we have a "'tortious injury [*i.e.,* the effect on Mr. Cresta's course of treatment due to appellees' alleged negligence] [which occurred] in this state [or district] by an act or omission [*i.e.,* initial examination and tests which were performed in Maryland] outside of the state [or district]'" by a defendant (Neurology Centers, *et al.*) who "'regularly does or solicits business or engages in any other course of conduct, or derives substantial revenue from goods consumed or *services rendered* in this state [or district].'" CASAD, *supra,* ¶ 2.04 [2][e] at 2–55 (citing Oklahoma long-arm statute in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct.

559, 62 L.Ed.2d 490 (1980) (emphasis added); *World–Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 297, 100 S.Ct. at 567 ("[w]hen a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' *Hanson v. Denckla,* 357 U.S. [235], 253 [78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283] [1958], it has clear notice that it is subject to suit there ...."). Even if we were to view Mr. Cresta as being "injured" in Maryland, we conclude that "[w]here the location of the injury may be described as 'fortuitous,' the court is not bound by the law of the place of the tort." *Kaiser–Georgetown v. Stutsman, supra,* 491 A.2d at 508. In *Kaiser–Georgetown,* as in the instant case, "the place of the injury [is] 'fortuitous' ... in light of the fact that the relationship of the parties to the litigation *was centered in the District." Id.* (emphasis added; footnote omitted).

judgment if one is obtained. The court will weigh the relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. *But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.*

330 U.S. at 508, 67 S.Ct. at 843 (emphasis added; footnote omitted); *accord Asch v. Taveres, supra,* 467 A.2d at 978.

As to the relative ease of access to sources of proof, the record shows that with the exception of the summary records at the Neurology Center's Chevy Chase office (which simply lists its contacts within the District of Columbia) the records relating to this case are all at District of Columbia hospitals. As noted, Mr. Cresta received medical treatment at George Washington and Georgetown Universities. Thus, the most significant portion of evidence is located in the District of Columbia.[4] Similarly, the location of the hospital is crucial to a consideration of the availability of compulsory process for attendance of unwilling witnesses. It appears that the cost of compelling doctors, nurses, and other hospital personnel to attend a hearing in Maryland would be especially prohibitive to appellant. In fact, appellants' counsel, in the hearing on appellees' motion to dismiss, proffered: "[It is] the availability and cost ... of compulsory service or process. Those two items are in serious doubt as to whether we can do anything.... The subpoena power ... in the state of Maryland does not extend beyond the state and you have to go through a special foreign procedure. That is expensive. That is time consuming. It is rather unfair because it is unbalanced." The same considerations are present in determining the cost of obtaining attendance of willing witnesses. It stands to reason that the adjudication of

this case would be less costly if conducted in the District of Columbia. Here both parties would have access to witnesses, both willing and unwilling, and records which are located in the District of Columbia. This would reduce some of the substantial costs to appellants. The fact that the trial would be relatively "easy, expeditious, and inexpensive," is a strong consideration militating in favor of hearing this case in the District of Columbia Superior Court. *See Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. at 508, 67 S.Ct. at 843.

With respect to the public interest, we conclude, as we did in *Sartori, supra,* that "the litigation would not be unduly burdensome on our courts precisely because this community has a legitimate interest in providing a forum for the enforcement of its laws to District of Columbia corporations." *Id.* at 886. In fact, the corporation with which we are concerned is not a mere business entity but a neurological center where numerous decisions are made which can literally mean the difference between life and death. A corporation which renders services that has such an indelible impact on the lives of District of Columbia residents must be amenable to suit where contacts are established, and the private and public interests mandate retention of the suit.

## IV.

■ In conclusion, without deciding whether the administrative framework, which a plaintiff must utilize *before* bringing suit in a Maryland circuit court,[5] is identical to "a court of equivalent jurisdiction," we conclude that the relative advantages to a fair trial would be best served in this forum. Appellants established contacts within this forum—they resided in this jurisdiction from 1981 to 1983; they received AFDC grants; Mr. Cresta attended George Washington University from fall 1980 to 1983; and medical treatment was rendered to Mr. Cresta in District of Co-

---

**4.** Indeed, it is appellants' contention that the treatment the decedent received in the District of Columbia was severely undermined by appellees' improper neurological examinations.

**5.** *See* Md.Ann.Code, Courts and Judicial Proceedings § 3–2A–01—§ 3–2A–09.

lumbia hospitals. It would be unfair, in the absence of an attempt by appellants to "vex," "harass," and "oppress" appellees, to disturb appellants' choice of forum. *See Gulf Oil, supra,* 330 U.S. at 508, 67 S.Ct. at 843.

Appellees concede that this action was not brought with the intent to "vex," "harass," or "oppress" them in a seriously inconvenient forum. In doing so, they have conceded the absence of the significant factor that would have made a convincing case in support of their motion for dismissal. *See Deupree v. Le, supra,* 402 A.2d at 429. Some twenty-five years ago, we stated that "[t]he rule is not that jurisdiction should be denied unless such denial would work an injustice, *but rather that jurisdiction should be taken unless to do so would work an injustice." Wilburn v. Wilburn,* 192 A.2d 797, 799 (D.C.1963) (emphasis added; footnote omitted). That principle is applicable here. We conclude that the trial court abused its discretion and we accordingly

*Reverse.*