John A. BENVENUTO, Jr., et al., Appellants,

v.

Joan DECHILLO, et al., Appellees.

No. 90–232.

District of Columbia Court of Appeals.

Argued Jan. 24, 1991.
Decided Feb. 26, 1991.

---

Timothy D. Junkin, with whom L. Barrett Boss, Washington, D.C., was on the briefs, for appellants.

Steven M. Buckman, Chevy Chase, Md., for appellees.

Before BELSON, STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

In this action, appellees seek to impose a constructive trust upon a piece of real property in the District of Columbia,[1] held in the individual name of appellant.[2] Appellees claim that the funds used to purchase the property in 1969 came from certain New York custodial bank accounts of which they were beneficiaries. The trial court denied the appellant's motions to dismiss on grounds of *forum non conveniens*, and he appeals.[3] We affirm.

I

The parties do not dispute the basic facts underlying this action. The appellees are three sisters, two residing in New York and one in Texas. They have brought suit in the District of Columbia against their half brother John Benvenuto and his present wife, both now residents of New York, with respect to his handling as custodian of certain New York bank accounts opened in 1965 by their mother, now deceased, at a New York bank. The accounts were opened on behalf of appellees, who were minors at the time, under the New York Uniform Gifts to Minors Act ("Uniform Act").

Appellees allege in their complaint that in May of 1969, appellant withdrew $48,000 from the accounts and used it to fund the purchase of a residence at 3301 Garfield St., N.W., in the District ("the property"). Appellant and his then-wife, Elaine Benvenuto, bought the property on May 29, 1969, for $48,000, taking title as tenants by the entirety and taking up residence there until 1975, when the wife sued for divorce. The final divorce decree issued by the Family Division of the District of Columbia Superior Court dissolved the Benvenutos' title and vested title solely in appellant. In making this property distribution, the Family Division judge made findings that on June 30, 1969, appellant signed three identical 60–day demand notes addressed to each appellee, evidencing an investment made on their behalf of $18,000 each, and promising semi-annual interest of seven and one-half percent, and repayment within 60 days of a written demand by appellees; the notes were approved and signed by the mother.[4]

---

1. Appellees' original complaint alleged the torts of wrongful conversion and breach of fiduciary duty, and sought the impression of a constructive trust with an order to convey the property to them, an accounting of rental proceeds, and damages. Appellees assert that in their amended complaint, filed after the notice of appeal here, they have "dropped their request for damages for breach of fiduciary duty, and no longer allege wrongful conversion of the custodial funds." The amended complaint thus seeks only a constructive trust, an accounting, and the establishment of record title via the tracing of the trust product, without necessarily involving a misappropriation of funds. Since appellant had no quarrel at oral argument with our consideration of the amended complaint, we rely on it here. Since all factual allegations were simply restated in the amended complaint with the changes in legal theory noted above, all further references to the complaint will simply be to the amended complaint.

2. "Appellant" refers throughout to appellant John Benvenuto. His present wife, Dominique DeGive, is a named party only because she may claim a statutory dower interest in the property.

3. Such trial court orders are immediately appealable to this court. *See Jenkins v. Smith,* 535 A.2d 1367, 1368 (D.C.1987) (en banc).

4. The promissory notes stated that "with the consent of your [appellees'] mother," appellant used the funds to "purchase[ ] this property ... for my own personal use." Although the notes were not in the record, they were attached to appellees' brief and were described in the complaint and in the divorce order. The court's decree was recorded among the land records of the District in 1985.

The mother of appellees and appellant died in New York in April, 1988, leaving John Benvenuto, who had moved back to New York after the

The complaint alleges, however, that appellees were never notified of the existence of the demand notes, nor was any payment of principal or interest ever made.

On November 3, 1979, appellant executed a deed of trust on the property, recorded in the District's land records, naming his mother and appellee Dechillo as trustees and evidencing indebtedness to the other two appellees of $140,000, without notice to any of the appellees; the obligation has allegedly not been repaid in any amount. Finally, the complaint alleges that appellant has been receiving rental income from the property since 1980 without disbursing any of it to appellees, and that child support enforcement and other orders have been recorded against the property in the land records of the District.[5]

## II

### A

The standards for reviewing a trial court's refusal to dismiss an action on the grounds of *forum non conveniens*, set forth in prior decisions of this court, can be simply summarized here. *See, e.g., Dunkwu v. Neville*, 575 A.2d 293, 294–95 (D.C. 1990); *Mills v. Aetna Fire Underwriters Insurance Company*, 511 A.2d 8, 10–11 (D.C.1986); *Carr v. Bio–Medical Applications of Washington, Inc.*, 366 A.2d 1089, 1092 (D.C.1976). *See also Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). "The decision to grant or deny a motion to dismiss on the grounds of *forum non conveniens* is committed to the sound discretion of the court and will not be overturned absent a clear abuse of discretion." *Cresta v. Neurology Center, P.A.*, 557 A.2d 156,

159 (D.C.1989); *Mobley v. Southern Railway Co.*, 418 A.2d 1044, 1047–48 (D.C. 1980). "Trial court discretion is to be guided by enumerated 'private interest factors' affecting the convenience of the litigants and 'public interest factors' affecting the convenience of the forum." *Mills, supra*, 511 A.2d at 10 (citing, *inter alia, Gulf Oil, supra*, 330 U.S. at 508–509, 67 S.Ct. at 843).

### B

The gravamen of appellees' complaint, and a key consideration in our affirmance here, is the attempt to trace the funds held in trust[6] for them into its product, real estate in the District of Columbia, and to have themselves determined as the rightful owners of that property.[7] This is a well-established course of action open to a wronged trust beneficiary. *See* V A. SCOTT, THE LAW OF TRUSTS, *Constructive Trusts* § 508.2, at 568 (W. Fratcher 4th ed. 1989) ("Where by the wrongful disposition of another's property, the wrongdoer acquires other property, the owner of the property may claim the product in whatever form it may be") and cases cited therein; *id.* § 508.1, at 557 ("The right to follow property into its product, and to claim either a lien thereon or a constructive trust thereof, is most frequently asserted against fiduciaries" and "is not limited to express trustee"); G. BOGERT, TRUSTS, § 161, at 577 (6th ed. 1987) ("The beneficiary ... may follow the trust res or its substitute ... and may obtain a decree for the return of the trust property or its product to the trust fund").

divorce, executor of her estate. According to appellees, her estate has been fully probated, there is no pending proceeding in New York of any kind, and the District of Columbia realty action was not a part of the probate of her estate.

**5.** According to the complaint, the deed of trust was established in order to prevent appellant's ex-wife from executing on the property in satisfaction of these judgments obtained by her against the property.

**6.** We use the word "trust" as indicative of the fiduciary relationship that exists between the custodian of funds under the Uniform Act and the minors who have the beneficial interest in those funds. *See* N.Y. EST. POWERS & TRUSTS LAW § 7–4.1 *et seq.* (Consol.Supp.1990).

**7.** Since all the appellees have now reached their majority, they presumably are entitled to distribution of property held on their behalf as custodians under the Uniform Act. *See* N.Y. EST. POWERS & TRUSTS LAW § 7–4.4(c) (Consol.Supp.1990) (age of majority is 18).

The only qualifications on the tracing doctrine seem to be the necessity of identification of the trust product as such and of election between tracing and damages. G. BOGERT, *supra*, § 163, at 591. Here, appellees have clearly elected to proceed on a tracing theory and have amended their complaint accordingly so that damages are no longer sought. It may well be true that the litigation will require an examination into the circumstances of the establishment and handling of the custodial accounts in New York, governed by New York law and evidence.[8] However, the importance of settling claims to District real property, preventing further wrongdoing concerning the property, and arranging the accounting of rental proceeds are all matters of significant District concern.

Furthermore, appellant's connection with the District and more particularly the subject property, even with respect to the custodial relationship, is not a mere passing one. For a considerable portion of the relevant time, appellant was a resident of the District.[9] He was divorced here in a proceeding in which the property and the source of its purchase money funds was an issue. He executed a deed of trust upon the property in an event apparently related to his obligations flowing from the divorce. Finally, he owned and received income from the property continuously since his departure from the District, an accounting for which is sought in this action.

We recognize that where the plaintiff resides in "another jurisdiction, ... it is much less reasonable to assume that his choice of a District of Columbia forum is convenient," and that "[t]his is especially so where the defendant as well does not reside in the District." *Mills, supra,* 511 A.2d at 10. Nonetheless, considering the circumstances of this case set forth above, we have no difficulty in concluding that the trial court did not abuse its broad discretion in denying the motion to dismiss.

*Affirmed.*

---

8. Appellees suggest it may be that a breach of trust can be made out by a showing that although the New York funds were properly invested in the property, the property has since been used for appellant's and not appellees' benefit.

9. Indeed, at the time of the issuance of the promissory notes in 1969, it appears he may already have become a District resident.