**Eugene BEARD, Appellant,**

v.

**SOUTH MAIN BANK, Appellee.**

**No. 89–CV–259.**

District of Columbia Court of Appeals.

Argued Oct. 3, 1990.

Decided Aug. 21, 1992.

Philip Clarke Baten, Washington, D.C., for appellant.

Valerie L. Tetro, Washington, D.C., for appellee. Joseph F. Cunningham and Ann S. Hudgins, Alexandria, Va., were on the brief for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

PER CURIAM:

Appellee South Main Bank (SMB), a Texas corporation, filed this action in the Superior Court against appellant Beard, a District of Columbia resident, alleging that Beard owed SMB more than $75,000 as a result of his default on two promissory notes which he had executed and delivered in Texas. Beard moved to dismiss the complaint on the ground of *forum non conveniens*, but the trial court denied the motion. From that denial Beard brings this appeal. We remand the case to the trial court for further proceedings.

I

On September 10, 1982, Beard executed and delivered to SMB a promissory note in the amount of $12,075.51, payable in full on February 17, 1983. This loan was intended to finance the renovation of an apartment building in Houston, Texas, which Beard owned. As collateral for the loan, Beard assigned a $12,000 certificate of deposit to SMB. The proceeds of the loan ended up in the savings account of Derrick Beard, appellant Beard's nephew, who was apparently acting as the contractor for the renovation project. There is a dispute as to how this money made its way into Derrick Beard's account. Beard asserts that it was mistakenly placed there; SMB maintains, however, that appellant Beard directed it to credit Derrick Beard's account with the loan proceeds.

On December 28, 1982, Beard executed and delivered to SMB a second promissory note in the amount of $11,021.16, also due on February 17, 1983. This loan was secured by the same certificate of deposit used to secure the earlier note. These funds were also deposited in Derrick Beard's account, and, as before, appellant

Beard claims that this was done by mistake. It is apparently undisputed that Derrick Beard took the proceeds of both loans without completing the renovation of the apartment building.

Neither loan was repaid by February 17, the maturity date for both notes. On March 22, 1983, Beard executed and delivered to SMB a third note in the amount of $22,500, but this time the loan proceeds were deposited in Beard's own account. This third loan was secured by the same certificate of deposit, as well as a lien on Beard's apartment building. Beard used the proceeds of this loan to pay most of what he owed on the September 10 and December 28 notes.

On July 20, 1983, the due date of the third note, Beard executed and delivered to SMB a fourth promissory note in the amount of $74,485.53. Some of the proceeds from this loan were used to pay the outstanding balance on the March 22 note, and the remainder—approximately $49,-000—was deposited in Beard's own account. This fourth note was renewed several times, the final maturity date being January 14, 1985.

On August 10, 1984, Beard executed a fifth and final promissory note. This note, in the amount of $16,199.70, was also payable on January 14, 1985. The proceeds from this loan were deposited in Beard's account. At this point Beard's total indebtedness to SMB on the fourth and fifth notes, the only two that were still outstanding, was $90,685.23. Beard did not pay what he owed on January 14, 1985, nor did he extend either of the two notes.

On January 19, 1985, the apartment building which was serving as partial collateral for the loans burned to the ground. Some time before that Beard's fire insurance on the property had been canceled, and SMB's lien on the property was extin-

guished by the claims of prior lienholders. Consequently, SMB did not recover any money from the building. On March 31, 1985, SMB set off the accrued value of the certificate of deposit that Beard had pledged as collateral against his outstanding loan balance, leaving an unpaid balance of $76,153.20.

In January 1988 SMB filed a complaint against Beard in the Superior Court of the District of Columbia, seeking the balance due on the two notes.[1] Beard filed a *pro se* answer in which he alleged fraud in the inducement as a defense to liability. Specifically, he claimed that SMB had mistakenly deposited the proceeds of the first two loans in Derrick Beard's account. Beard contended that he had been defrauded by Marvin Joubert, an employee of SMB, into executing the subsequent notes after having been assured that SMB would take responsibility for the funds mistakenly placed in his nephew's account.

After SMB served Beard with a discovery request, Beard retained counsel, who filed a motion to dismiss the complaint on the ground of *forum non conveniens*.[2] In support of his motion, Beard asserted that he needed to secure the live trial testimony of Derrick Beard and Marvin Joubert to support his defense of fraud. He theorized that his nephew and Joubert were involved in a scheme to defraud him into executing the promissory notes. Beard contended that these two witnesses would not appear voluntarily and that their live testimony was critical to his case. He acknowledged that the two men would deny his allegations of fraud, but maintained that the trier of fact would be able to judge their credibility from their demeanor on the witness stand, and that the case should not be tried in the District of Columbia because the Superior Court could not compel the attendance of these two witnesses.

---

1. The complaint sought only $75,728.43 in damages, slightly less than the total debt owed. SMB noted this discrepancy in a later pleading, but stated that it had chosen not to amend its complaint to reflect the proper amount.

2. SMB asserts that it chose to sue in the District of Columbia because jurisdiction over Beard is

assured by virtue of Beard's permanent residence in the District. Furthermore, SMB claims that all of Beard's assets are located in the District, and that enforcement of any judgment against Beard would therefore be easier here. Beard does not contest these allegations.

The statute of limitations applicable to an action on a promissory note in Texas expired on January 14, 1989. On February 9, 1989, SMB filed its opposition to Beard's motion to dismiss, in the course of which SMB noted that Joubert was no longer its employee.

▌ The trial court denied Beard's motion to dismiss in a one-sentence order. Beard appeals.[3]

## II

▌ The decision to grant or deny a motion to dismiss a complaint on the ground of *forum non conveniens*[4] is committed to the sound discretion of the trial court. *Cresta v. Neurology Center*, 557 A.2d 156, 159 (D.C.1989) (citing cases). Such decisions "are entitled to receive considerable deference from this court." *Jenkins v. Smith, supra* note 3, 535 A.2d at 1369. Although on appeal we must make our own independent evaluation of the "public" and "private" factors discussed in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), we nevertheless "will not reverse such a ruling unless presented with clear evidence that the trial court abused its broad discretion." *Jenkins v. Smith, supra* note 3, 535 A.2d at 1369 (citations omitted).

▌ Our review in this case is severely hindered by the trial court's failure to state on the record the reasons for its decision. The order denying the motion to dismiss contained no statement of reasons and was not accompanied by an opinion, nor did it incorporate by reference the arguments advanced in SMB's opposition. Furthermore, there was no hearing at which the court might have given us some insight into the basis for its ruling. Although we have said that we "may examine the record and infer the reasoning upon which the trial court made its determination" when we review such an exercise of discretion, *Johnson v. United States*, 398 A.2d 354, 366 (D.C. 1979), it should normally be necessary to do so only when the trial court has· been forced to "make rulings off the cuff ... in the press and urgency of a trial...." *Id.* at 365 n. 8. In this case, however, there was no such "press and urgency," and the decision to be made was dependent on a number of discrete factors and could have gone either way. In such cases the better practice would be for the trial court to place on the record the reasons for its ruling, either orally from the bench or in a written order. By doing so, the court can obviate a remand for a statement of reasons when a remand might otherwise be necessary. We reiterate here what we said long ago in *Johnson:* that "both the trial judge and trial counsel should take pains to ensure that the record does reflect both the foundations and the reasoning behind the discretionary decision." *Id.* at 366.

We recognized in *Johnson* that in some cases "the facts may leave the trial court with but one option it may choose without abusing its discretion...." *Id.* at 364. In such cases this court may affirm the trial court's decision even if there is no statement of reasons. But this is not such a case. As the concurring opinions demonstrate, the trial court might reasonably have concluded that Beard failed to meet his "heavy burden" of showing that dismissal on *forum non conveniens* grounds is warranted, *Asch v. Taveres*, 467 A.2d 976, 978 (D.C.1983), but it also might reasonably have reached the opposite conclusion.[5] In these circumstances we must remand the case to the trial court for a

3. In the District of Columbia courts, an order denying a motion to dismiss on the ground of *forum non conveniens* is immediately appealable. *Frost v. Peoples Drug Store, Inc.*, 327 A.2d 810 (D.C.1974); *see Jenkins v. Smith*, 535 A.2d 1367 (D.C.1987) (en banc). *But see Van Cauwenberghe v. Biard*, 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (interlocutory appeal from such an order not allowed in federal courts).

4. D.C.Code § 13–425 (1989) provides:

   When any District of Columbia court finds that in the interests of substantial justice the action should be heard in another forum, the court may stay or dismiss such civil action in whole or in part on any conditions that may be just.

5. We take no position here on whether either conclusion is correct.

statement of its reasons for denying the motion to dismiss. On remand the court may, in its discretion, reopen the hearing on the motion, or it may instead confine itself to a review of the existing record.

*Remanded.*

ROGERS, Chief Judge, concurring:

The difficulty presented by this appeal is the absence of a statement of reasons by the trial court for denying appellant's motion because it is not possible to conclude that the trial judge had only one option to choose without abusing her discretion. *Johnson v. United States*, 398 A.2d 354, 364 (D.C.1979). Appellant argued in the trial court that his motion to dismiss should be granted because all of the events transpired in Texas, involving an official of the appellee bank in Texas and a Texas contractor, and hence all of the relevant records and witnesses were in Texas. He asserted that the witnesses, the bank official and the contractor (also identified by name), were critical to his defense of fraud. Because the witnesses were not amenable to being served with process to appear in the District of Columbia, the filing of the lawsuit in the District prevented appellant from presenting his only defense to appellee's claim, and he argued, therefore, his motion to dismiss should be granted. I write principally to make clear that, on the record before this court, it is hardly clear that the motion to dismiss was properly denied.

The complaint confirms that there were financial transactions between appellant and appellee bank, that appellee bank took a security interest in Texas land owned by appellant, and that appellee bank's principal place of business and state of incorporation are outside of the District of Columbia. The documentation offered by the parties indicates that there were such financial transactions, and an exhibit to appellant's motion to dismiss outlines the nature of his defense of fraud by a bank official and a contractor.[1] Our decisions have required, in order for a defendant to succeed on a motion to dismiss for *forum non conveniens*, for a defendant to be able to prove, as a result of out-of-state investigative discovery, that the defense to the underlying action will succeed. The documentation in the record, combined with appellant's contentions were adequate, in my view, to show that he could raise his claimed defense in an alternative forum.[2] The representations by counsel are those of an officer of the court. *In re Gates*, 248 A.2d 671, 677 (D.C.1968).

The witnesses whom appellant has identified are a bank official and a contractor. These are persons with established professional connections, not merely vague presences or transient workers. Their connections are in Texas, where appellee bank also is. Hence there can be no suggestion that appellant is seeking a dismissal in order to defeat appellee's ability to pursue its lawsuit. Rather, he claimed that while the bank could prove its prima facie case through admissions by appellant relating to the loan documents, he could only defend with testimony from the witnesses about their roles in the financial transactions.[3]

---

1. Exhibit 15 to appellant's brief is a verified letter from appellant to the Clerk of the Superior Court and is designated in the record as appellant's answer to appellee's complaint. Appellant's counsel also incorporated the factual assertions contained in the exhibit in appellant's motion to dismiss for *forum non conveniens*. Those factual assertions are that appellant denies he owes the amount claimed by appellee, explaining that this is because of several errors by the bank and fraud by one of its officers. The alleged errors involved the placement of the proceeds of a loan granted to appellant by the bank into the wrong account. Appellant claims that the bank admitted its mistake, but indicated that it would nonetheless hold appellant responsible because the other account was that of appellant's contractor. In addition, appellant claims that the bank thereafter gave him another loan but in so doing its officer misled appellant into signing for a loan to cover the amount that had been misplaced in the contractor's account at the bank. The factual assertions are accompanied by documents showing loan applications at the Texas bank and statements of accounts.

2. *See* note 5, *infra.*

3. In his memorandum in support of his motion, appellant claimed that appellee bank's complaint involved two loans that represented a consolidation of three previous loans. In his reply to appellee bank's opposition to the mo-

There was nothing before the trial court to suggest that the witnesses would not be available in Texas, nor that they would be unable to support appellant's defense of fraud much less that appellant would be prevented from presenting his defense in Texas. While various forms, entitled "Loan Authorization—Application," instruct loan proceeds to be deposited into account number 75–1410–7 (*i.e.*, the contractor's account), there is no signature by appellant on these forms. Also, the color designations for copies at the bottom of these forms do not even show that appellant (*i.e.*, the customer) was to receive a copy.

Any suggestion that the witnesses would assert their Fifth Amendment privilege against self-incrimination is pure speculation. *See* concurring opinion of Associate Judge Terry at 209–210. There is nothing to indicate that the witnesses are subject to criminal prosecutions or that, if they were, their claims to a blanket privilege against self-incrimination would be sustained, much less that immunity would not be granted to them. Although appellant's counsel stated that the witnesses would deny the fraud, it also appears from the record that appellant's claim of fraud rested in part on non-incriminating testimony of the witnesses. For example, the bank official and the contractor could affirm or deny that the loan proceeds were placed in the contractor's account and the bank official could also affirm or deny the procedures by which appellant obtained a second loan. See note 2, *supra*. On the other hand, the trial court could not properly grant appellee's motion to dismiss on the ground that appellant's witnesses would be subject to criminal prosecution for the very fraud that appellant seeks to assert, and claims is impossible to prove at a trial in the District

of Columbia, as a defense to appellee's claim.

Insofar as private interests are concerned, access to proof and availability of process weigh in appellant's favor. Although appellee would be burdened by having to file a new lawsuit in the District of Columbia to enforce any judgment it obtained against appellant in Texas, and to that extent this factor weighs in appellee's favor, this would not defeat appellee's ability to recover whereas suit in the District would defeat appellant's ability to defend. There was no evidence appellee filed here to vex or harass appellant. This court acknowledged in *Kaiser Foundation Health Plan of Mid–Atlantic States, Inc. v. Rose*, 583 A.2d 156 (D.C.1990), that "substantially less deference is accorded to plaintiff's choice of forum when the plaintiff resides in another jurisdiction, for it is much less reasonable to assume under such circumstances that the District of Columbia was selected because it is a convenient forum." 583 A.2d at 158 (citing *Dunkwu v. Neville*, 575 A.2d 293 (D.C.1990)). Appellee bank claimed that it filed suit in the District of Columbia "solely for the convenience of [appellant] who presently resides in the District of Columbia" and not in Texas, "the more convenient forum for [appellee bank]...." Thus, appellant and appellee are in agreement that Texas would be the more convenient forum! The fact that appellant, the defendant, resides here does not preclude dismissal of the case on the ground of *forum non conveniens*. *Carr v. Bio–Medical Applications of Wash., Inc.*, 366 A.2d 1089 (D.C.1976).[4]

The public interest appears also to weigh in appellant's favor. The District of Columbia courts are burdened with litigation and can hardly welcome the opportunity to embark upon a study of Texas law. At

---

tion to dismiss, appellant maintained, referencing his affidavit, see note 1, *supra*, that some of the loan transactions "were an attempt by an employee of the plaintiff bank to cover up his act of depositing the total proceeds of one loan to [the contractor's] account, who later used the funds for his own purposes."

**4.** *Daquila v. Schlosberg*, 102 U.S.App.D.C. 366, 367, 253 F.2d 888, 889 (1958), is inapposite

because that opinion does not address the situation claimed by appellant, namely, that trial in the District of Columbia would make it impossible for him to present his only defense to appellee bank's claim. Nor is there anything in that opinion to suggest that had the court been presented with such a situation, there was only one option available to the trial court in ruling on the motion to dismiss for *forum non conveniens*.

this stage of the proceedings it would appear optimistic to conclude that the litigation involves simple legal principles. See note 2, *supra*. Inability to present one's only defense to a claim is a demonstration of "a seriously inconvenient forum." *Cresta v. Neurology Center*, 557 A.2d 156, 161 (D.C.1989); *cf. Kaiser Foundation Health Plan of Mid–Atlantic States, Inc. v. Rose*, *supra*, 583 A.2d at 160 (by assuming jurisdiction, trial court would prevent defendant from asserting Virginia's liability cap).

Accordingly, I concur in the remand of the case to the trial court.[5]

TERRY, Associate Judge, with whom STEADMAN, Associate Judge, joins as to part II, concurring:

I join reluctantly in the court's decision to order a remand for a statement of reasons. In this court's landmark case on trial court discretion, *Johnson v. United States*, 398 A.2d 354 (D.C.1979), we said that in some cases "the facts may leave the trial court with but one option it may choose without abusing its discretion...." *Id.* at 364. I am strongly tempted to conclude that this is one of those cases, but I must resist that temptation because there are not quite enough facts established in the record, or even alleged, to support such a conclusion.

## I

In deciding how to rule on a motion to dismiss for *forum non conveniens*, the trial court must consider both the private interests of the litigants and the public interest of the forum. *Asch v. Taveres*, 467 A.2d 976, 978 (D.C.1983) (citations omitted). A defendant seeking dismissal bears the heavy burden of showing that both public and private interests favor dismissal. Unless the defendant meets this burden, the trial court should rarely disturb the plaintiff's choice of forum. *Id.* In particular, when the plaintiff elects to file suit in the defendant's place of residence, as SMB

has done here, the plaintiff's choice of forum "should be disturbed only upon a strong showing that [dismissal] is required by the balance of convenience." *Daquila v. Schlosberg*, 102 U.S.App.D.C. 366, 367, 253 F.2d 888, 889 (1958). Finally, we must remember that whether Texas is a more convenient place for this case to be tried is really beside the point. The issue is not whether Texas is the more convenient forum but, rather, whether the District of Columbia is a seriously *inconvenient* forum. *See Cresta v. Neurology Center*, *supra*, 557 A.2d at 161.

The Supreme Court in *Gulf Oil Corp. v. Gilbert*, *supra*, 330 U.S. at 508–509, 67 S.Ct. at 843, listed several factors to be considered in assessing these public and private interests, and this court has repeatedly held that its review of trial court rulings on *forum non conveniens* motions must include an independent evaluation of those factors. *See Jenkins v. Smith*, 535 A.2d 1367, 1369 (D.C.1987) (en banc) (citing cases). Given the shortcomings of the record, I offer a few thoughts on these matters.

### A. *The private interest*

The private interest is the litigants' interest in the ease, expedition, and expense of the trial. *Asch v. Taveres*, *supra*, 467 A.2d at 978. Factors relevant to that interest include the relative ease of access to proof, the availability and cost of compulsory process, the enforceability of a judgment once obtained, and the likelihood (if any) that the plaintiff has sought to vex or harass the defendant by his or her choice of forum. *Id.* (citations omitted).

#### 1. *Access to proof and availability of compulsory process*

Beard's principal argument is that the trial court should have ruled that the factors of access to proof and availability of compulsory process required dismissal of this action. He contends that the District of Columbia is a seriously inconvenient fo-

---

5. Although the statute of limitations has run in Texas, this court has heretofore conditioned dismissal on the ground of *forum non conveniens* on the defendant's agreement to waive that de-

fense. *See Kaiser Foundation Health Plan of Mid–Atlantic States, Inc. v. Rose*, *supra*, 583 A.2d at 160 (citing *Mills v. Aetna Fire Underwriters Ins. Co.*, 511 A.2d 8, 15–16 (D.C.1986)).

rum because it is impossible for him to present his affirmative defense to SMB's claim here. Because Marvin Joubert and Derrick Beard are necessary witnesses to establish his defense of fraud, he maintains, he is precluded from raising his only defense to SMB's claim because the District of Columbia courts cannot compel the attendance of either witness.

· The unavailability of a defense in the plaintiff's chosen forum may, in some cases, be a compelling reason for dismissing the case on the ground of *forum non conveniens.* A prerequisite for any *forum non conveniens* dismissal, however, is the availability of an alternate forum in which the plaintiff's action "may more appropriately be entertained." *Mills v. Aetna Fire Underwriters Insurance Co.,* 511 A.2d 8, 13 (D.C.1986) (citations omitted); *accord, Kaiser Foundation Health Plan of Mid–Atlantic States, Inc. v. Rose,* 583 A.2d 156, 160 (D.C.1990). The alternate forum cannot be a "more appropriate" one if the defense that is allegedly precluded in the plaintiff's chosen forum is also unavailable in the alternate forum. Although Beard asserts that he is precluded from raising his defense of fraud in the District of Columbia, he has not made even a rudimentary showing that he can raise it in Texas.[1]

In the trial court, Beard relied solely on the unsworn allegations of his counsel to substantiate his claim that a trial in the District of Columbia would seriously inconvenience him by precluding him from raising a defense of fraud. Counsel alleged that Joubert and Derrick Beard were in Texas and that he needed their trial testimony, which would consist of their denial of Beard's allegations. Counsel never even tried, however, to demonstrate that Joubert and Derrick Beard were actually in Texas or were otherwise subject to the compulsory process of the Texas courts. No mention was made of any other witness who might be available in Texas but not in the

District of Columbia. This court said in *Jenkins v. Smith,* 535 A.2d 1367, 1371 (D.C.1987) (en banc), that the "empty assertions of appellant's counsel" were entitled to very little weight in deciding a *forum non conveniens* motion. I think the same can be said here.

This is the sort of case in which one would expect to find at least some evidence in the record, actual or proffered, to support Beard's claims of fraud. Beard claims that large sums of his money were mistakenly placed in Derrick Beard's account on two separate occasions, and that when he discovered this, he complained to Joubert about the error. It seems likely that there would be some sort of documentation to support this defense—such as, for example, a letter from the bank acknowledging that the loan proceeds had mistakenly been deposited in the wrong account. Yet Beard has not furnished the court with any documents (aside from his own pleading), nor has he even alleged that any exist. By contrast, SMB has produced a letter from Beard and other bank records showing that Beard personally authorized the transfer of other funds in June and July of 1982, shortly before the loans at issue here, to Derrick Beard's account.[2] Beard has not proffered even a shred of evidence, other than the anticipated testimony of Joubert and Derrick Beard, which might be relevant to his claim of fraud. Beard conceded in his motion to dismiss, moreover, that their testimony would amount to nothing more than a denial of his allegations. I do not see how such testimony could support his defense of fraud.

Moreover, there is no assurance that either Joubert or Derrick Beard would be available to testify. SMB contends that if Beard can locate these witnesses in Texas, D.C.Code § 14–104 (1989) and Super.Ct.Civ.R. 45(d)(2) would allow him to depose them in Texas and use their deposition testimony at trial. Beard argues that

---

1. I note also that Texas may not be available as an alternate forum, as *Mills* requires, because the Texas statute of limitations expired in January 1989, while Beard's motion to dismiss was pending before the trial court.

2. In response to Beard's motion to dismiss, SMB filed an affidavit from one of its employees, as well as documentary evidence, which supported its claim on the notes. This evidence remains uncontroverted.

because the witnesses will deny his allegations of fraud, their depositions will not be sufficient; he needs their live testimony at trial so that the trier of fact "would have the benefit of observing their demeanor...." Both arguments miss the mark. I find it doubtful at best to expect that Joubert and Derrick Beard, even if they can be found and subpoenaed, will testify anywhere. The allegedly fraudulent conduct that Beard ascribes to them is undoubtedly criminal under the laws of Texas, just as it is in the District of Columbia,[3] so that they would almost certainly have a valid Fifth Amendment privilege against self-incrimination. Texas courts recognize that the Fifth Amendment privilege applies in civil as well as criminal trials. *Ex parte Butler*, 522 S.W.2d 196, 198 (Tex.1975). Thus, even if we were to allow dismissal of this case in favor of trial in Texas, it is extremely unlikely that Beard would be able to compel the testimony of these two witnesses. On the other hand, as Chief Judge Rogers points out, *ante* at 207, there was nothing before the trial court to suggest that Joubert and Derrick Beard would not be available in Texas, or that, if available, they would claim their privilege and refuse to testify.

In the last analysis, this court cannot base its decision on the possibility that Joubert and Derrick Beard may have a Fifth Amendment privilege when we do not know whether the trial court even considered that possibility. I raise the point here mainly for the trial court's consideration on remand. Unless Beard can show that these witnesses are available (*i.e.*, in Texas and subject to subpoena) and willing to testify despite the possibility of self-incrimination, the court could reasonably conclude that the factors of access to proof and availability of compulsory process do not justify dismissal of this case in the District of Columbia. But that is a conclusion that the trial court must make in the first instance; this court cannot do so on the assumption that the trial court would so rule.

### 2. *Enforceability of a judgment once obtained*

The next private interest factor to be considered is the enforceability of a judgment once it is obtained. *Asch v. Taveres, supra*, 467 A.2d at 978. When the defendant's principal source of income is in the District of Columbia, this factor weighs heavily against granting a motion to dismiss on *forum non conveniens* grounds. *Creamer v. Creamer*, 482 A.2d 346, 353–354 (D.C.1984).

SMB alleges, without contradiction, that the only assets which could be used to satisfy any judgment against Beard are located in the District of Columbia. Beard does not claim that the fact that the judgment would ultimately be enforced here somehow inconveniences him; he notes only that a judgment obtained in Texas would be enforceable here as well. While this is true, enforcement of a foreign judgment would require further proceedings in the District of Columbia courts. See D.C.Code § 15–352 (1992 Supp.); Super.Ct.Civ.R. 72. This would be an additional burden for SMB, but it would not inconvenience Beard.

### 3. *Evidence of the plaintiff's attempt to vex or harass*

The final private interest factor to be considered is whether the plaintiff seeks to vex or harass the defendant by his or her choice of forum. *Asch v. Taveres, supra*, 467 A.2d at 978. This court has recognized that "dismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to harass the defendant or take advantage of favorable law." *Mills v. Aetna Fire Underwriters Insurance Co., supra*, 511 A.2d at 14 (citation omitted). I see no sign of such harassment here.

Beard claims that SMB brought this suit in the District of Columbia to vex and harass him. He concedes that the action was not originally brought for that purpose, but he maintains that once he raised his defense of fraud, SMB had an obli-

---

**3.** *See, e.g.*, D.C.Code § 22–3821 (1989) (criminal fraud statute). It may also be a crime under the federal bank fraud statute, 18 U.S.C. § 1344 (1988).

gation to refile the suit in Texas instead. His argument seems to be that his filing of the motion to dismiss somehow converted SMB's properly brought action into an action brought solely to vex and harass. There is no legal or factual basis for such an argument.

The purpose of the rule stated in *Mills* (and elsewhere) is to penalize the plaintiff who intentionally chooses to bring suit in an inconvenient forum solely to harass the defendant. The court's inquiry, therefore, must begin and end with an examination of the plaintiff's motives at the time the action was filed. Beard concedes that SMB did not file its complaint in the District of Columbia solely to harass him; as he says in his brief, "the suit started out with good intentions...." Indeed, the record suggests that SMB chose the District of Columbia in an effort to bring about a fair, speedy, and inexpensive end to this litigation. There is no evidence in the record, or even a proffer, that SMB chose to sue in the District of Columbia in an attempt to vex or harass Beard. The trial court could not reasonably have concluded otherwise.

### B. *The public interest*

The public interest is the interest of the plaintiff's chosen forum in hearing—or not hearing—the case. Factors relevant to a determination of the public interest include administrative difficulties caused by the congestion of local court dockets with foreign litigation, the imposition of jury duty on citizens of a community having no relationship to the litigation or the parties, and the inappropriateness of requiring local courts to interpret the laws of another jurisdiction. *Asch v. Taveres, supra,* 467 A.2d at 978.

The defendant's failure to show serious inconvenience will not require the court to honor the plaintiff's choice of the District of Columbia as a forum when the District "lacks substantial contacts with the cause of action...." *Dunkwu v. Neville,* 575 A.2d 293, 296 (D.C.1990). When that happens, the public interest usually outweighs the private interest of the plaintiff and may justify a dismissal on the theory that it "would be unwise and unfair ... to clog the crowded dockets of our courts with ... imported litigation, absent good reason for doing so." *Mills v. Aetna Fire Underwriters Insurance Co., supra,* 511 A.2d at 12. While it could be argued that a defendant's residence in the District is always a "substantial contact," we have declined to adopt a *per se* rule which would prohibit a *forum non conveniens* dismissal whenever one of the parties is a District of Columbia resident. *Carr v. Bio–Medical Applications of Washington, Inc.,* 366 A.2d 1089, 1093 (D.C.1976).

This court has held that when the District of Columbia's sole contact with the litigation is that it is the corporate residence of the defendant, the plaintiff must make an affirmative showing of some connection between the District and either the plaintiff or the cause of action in order to survive a motion to dismiss. *Mills, supra,* 511 A.2d at 12; *District–Realty Title Insurance Corp. v. Goodrich,* 328 A.2d 93 (D.C.1974); *Pitts v. Woodward & Lothrop,* 327 A.2d 816, 817 (D.C.1974), *cert. denied,* 420 U.S. 911, 95 S.Ct. 832, 42 L.Ed.2d 841 (1975). However, we have distinguished cases involving corporate "residence" from those in which the District is an individual defendant's personal residence. *Pitts, supra,* 327 A.2d at 817. When the defendant is a private individual and the plaintiff elects to sue in the defendant's state of residence, the plaintiff's choice of forum should be disturbed only upon a strong showing that dismissal "is required by the balance of convenience." *Daquila v. Schlosberg, supra,* 102 U.S.App.D.C. at 367, 253 F.2d at 889, cited in *Pitts, supra,* 327 A.2d at 817.

Beard contends that the District of Columbia has no substantial contacts with this litigation, but that Texas does. He asserts that the notes were executed in Texas, that the collateral for the loans is located there, and that Texas law will determine the outcome of the case. While these assertions are all correct, they are not dispositive. Our courts, like most urban courts, are severely congested; nevertheless, the District of Columbia is Beard's residence, and that very fact gives this

case a substantial contact with the District. This is not a suit between two non-residents (like *Dunkwu v. Neville*, for example), nor does it involve a corporate defendant who is merely licensed to do business here (as was the case in *Pitts*). While the trial court will have to apply Texas law to this dispute, the case does not appear to present any complex legal issues.[4] It is a simple action on a pair of promissory notes involving an unpaid debt.[5] The fact that the District is Beard's residence is a sufficient contact to support SMB's choice of forum and would justify denial of Beard's *forum non conveniens* motion unless Beard can show that the "balance of convenience" favors dismissal. *Daquila v. Schlosberg, supra,* 102 U.S.App.D.C. at 367, 253 F.2d at 889.

### C. Conclusion

In my judgment, most of Beard's arguments are meritless on their face. His claim that this suit was brought in the District of Columbia to vex and harass him is essentially frivolous, as is his assertion that this case involves "foreign real estate" and therefore should be tried in Texas, where that real estate is located. His contention that this case lacks any substantial contact with the District simply ignores the fact that he is himself a District resident and has assets here from which a judgment in SMB's favor can be satisfied. The fact that the Texas statute of limitations has run may also be sufficient to require that the case remain here. I vote for a remand, however, because the trial court failed to state its reasons for denying the motion to dismiss, and because I cannot discern from the record what those reasons were. Specifically, I cannot conclude that the facts left the trial court "with but one option [to] choose without abusing its discretion,"

---

4. In saying this, I assume that Beard is unlikely to come up with any evidence of fraud beyond what he has already mentioned, and that he therefore will be unable to rely on a defense of fraud.

5. Beard argues that the District is a seriously inconvenient forum because this litigation involves "foreign real estate." While it may well be true that the District is often an inconvenient place to litigate claims over foreign real estate,

*Johnson v. United States, supra,* 398 A.2d at 364, in assessing the viability of Beard's fraud defense in Texas and the availability of his witnesses there. I think the odds are in favor of keeping the case in the District of Columbia, especially since the burden is on Beard to justify dismissal on *forum non conveniens* grounds, but at this point I cannot be sure.

### II

I cannot end this opinion without expressing the view that this appeal really should not be here. A few years ago this court en banc, dividing 5 to 4, declined to overrule a prior holding[6] that the denial of a *forum non conveniens* motion was immediately appealable as a "collateral order." *Jenkins v. Smith,* 499 A.2d 128 (D.C.1985), *supplemental opinion,* 535 A.2d 1367 (D.C.1987) (en banc). I was among the dissenters in *Jenkins,* believing strongly that review of any such ruling should await a final judgment in the case. I see no need to state my reasons here, for they are set forth in my dissenting opinion in *Jenkins,* 535 A.2d at 1372, and they have not changed.

With seven more years of experience since *Jenkins* was decided, I think it may be appropriate for the en banc court to consider this matter again. We held in *Frost, supra* note 6, that the denial of a motion to dismiss in these circumstances was appealable under the collateral order doctrine, which derives from the Supreme Court's decision in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In the last decade or so, the Supreme Court has been rather strict in its application of that doctrine. *See, e.g., Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79

---

that is not what this case is about. Simply stated, this is an action on two promissory notes to collect a debt; it does not present any issues of Texas real property law. Consequently, I think Beard's "foreign real estate" argument is without merit.

6. *Frost v. Peoples Drug Store, Inc.,* 327 A.2d 810, 812–813 (D.C.1974).

L.Ed.2d 288 (1984); *Richardson–Merrell, Inc., v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985). Most significantly, the Court held in *Van Cauwenberghe v. Biard,* 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988), that the denial of a *forum non conveniens* motion was not appealable under the federal "final order" statute, 28 U.S.C. § 1291 (1988), as a collateral order. The District of Columbia has a "final order" statute, D.C.Code § 11–721(a)(1) (1989), which was modeled on the federal statute and, in all material respects, is identical to it. Our holding in *Frost* was based on that District of Columbia statute.

With *Van Cauwenberghe* on the books, I think this court might appropriately take another en banc look at *Frost* and *Jenkins.* For several reasons, the case at bar may not be the best vehicle for doing so, but I suspect that one of these days, sooner rather than later, a case will present itself that offers us an opportunity to reconsider those two unwise decisions and to reconcile our collateral order jurisprudence with that of the Court where it originated.